**COMMUNIST PARTY OF the UNITED STATES et al.**

v.

**Markham L. GARTLEY, Secretary of State of the State of Maine, et al.**

Supreme Judicial Court of Maine.

Sept. 22, 1976.

Dunlap, Wood & O'Brien by Gary C. Wood, Portland, for plaintiffs.

Donald Alexander, Deputy Atty. Gen., Augusta, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

POMEROY, Justice.

"But from hence it appears that every man, that is to give his vote on the election of members to serve in Parliament, has a several and particular right in his private capacity, as a citizen or burgess. And surely it cannot be said, that this is so inconsiderable a right, as to apply that maxim to it, de minimis non curat lex. A right that a man has to give his vote at the election of a person to represent him in Parliament, there to concur to the making of laws, which are to bind his liberty and property, is a most transcendant thing, and of an high nature, . . . ." *Ashby v. White*, 92 Eng.Rep. 126, 135–36 (1703) (Holt, C. J.).

This appeal from the denial by a Superior Court Justice of an appeal under Rule 80B, M.R.Civ.P., from action of the Secretary of State involves the right to vote, which is a "most transcendant thing, and of an high nature", and the right of candidates for public office and a political party to appear on the ballot, which right is likewise "of an high nature."

The factual background of the controversy is substantially as follows. On May 27, May 28, and June 8, 1976, Gus Hall, a declared candidate for the office of President of the United States; Jarvis Tyner, a declared candidate for the office of Vice President of the United States; and Samuel L. Webb, Steve R. Wheaton, John R. Hanson, John Rummel, Susan R. Vago, and James E. Smethurst, all candidates for Electors; and The Communist Party of the United States a national political party, filed nomination petitions intended to effect the placing of their names and the name of the Communist Party on the November 1976 general election ballot.

On their face, such petitions contained 13,870 names. To be effective for the purpose designed, the petitions were required to contain at least 10,918 signatures of legally qualified voters. 21 M.R.S.A. § 492(5).

On June 10, 1976, Representative Louis Jalbert of Lewiston, Maine, sent a letter which was received by the Secretary of State in which he said, among other things:

"It has been brought to my attention, that many of these signatures were obtained under false pretenses, for the peopel did not actually know what they were signing." [1]

That this letter was filed in the time allowed for the filing of a "challenge of validity of petitions" is not disputed.[2]

On August 25, 1976, a hearing was held at which time the Secretary of State received additional evidence. In part, this evidence included computer print-outs with the certifications from the local voter registrars attached. On an examination of the nomination petitions and the certified lists of registered voters, the Secretary of State found "4,031 signatures . . . of persons who are not registered voters in the communities which they have indicated as their voting residence." The result of this finding was a determination by the Secretary that "the petitions for the Communist Party of the United States lack sufficient signatures to justify placing their names on the November ballot, . . . ."

A complaint was filed under Rule 80B of the Maine Rules of Civil Procedure and equitable relief requested. The Superior Court affirmed the findings and conclusions of the Secretary of State.

---

1. The full text of Representative Jalbert's letter is as follows:

"Communism provides the greatest external and internal danger to our free society and it is inconcievable [sic] to me that there are 13,418 Communists residing in Maine, even though this was the number of signatures filed in petitions circulated in Maine to allow the Communist party to post its presidential candidate on Maine ballots.

"It has been brought to my attention, that many of these signatures were obtained under false pretenses, for the people did not actually know what they were signing.

"Mr. Secretary, I wish to take advantage of my constitutional right to challenge the validity of the signatures on the petitions. I hereby do so and ask that each name be checked by the Registrar of Voters in the municipality in which the voter claims legal residency, for proper registration, proper signature, correct address and also for forgery and duplication of names.

"If, as I suspect, you find an insufficient number of valid signatures after the invalid ones are deleted, then I ask that you disallow the petitions."

2. 21 M.R.S.A. § 494(2), in effect at all times material hereto, reads as follows:

"Anyone desiring to challenge the validity of a nomination petition shall notify the Secretary of State of such challenge in writing by or before 5 p.m. on the 7th day after the date of the primary election. Such written notice shall set forth the reasons for the challenge."

This case is now before us on appeal from that decision.[3]

■ We find that the Secretary of State did have the authority to review the petitions and subsequently declare them void as required by 21 M.R.S.A. § 492(11).

The appeal is denied.

■ Under the statutory procedures for conducting elections, primary responsibility is vested in the Secretary of State to make the necessary preparation for the conduct of an election. 21 M.R.S.A. § 1 *et seq.* In particular, the Secretary of State is responsible for preparing the general election ballots. 21 M.R.S.A. § 702. The ballot is to contain the name of each nominee. 21 M.R.S.A. § 702(1). It necessarily follows that the Secretary of State must determine who is a nominee in order to prepare the ballots as he is required to do by law.

■ The statute provides two methods by which an individual may become a nominee, i. e.,

(a) nomination by primary election (21 M.R.S.A. §§ 441–48); and

(b) nomination by petition (21 M.R.S.A. §§ 491–94).

To become a nominee by the latter process, the petitions which make a person a nominee are required to be in form and substance in accordance with the specific requirements of subsections 1 through 10 of 21 M.R.S.A. § 492. Subsection 11 specifically provides that

"[a] nomination petition on file after 5 p. m. on the date of primary election which does not meet the requirements of subsections 1, 5, 6, 8, 9 or 10 *is void.*" (Emphasis supplied) 21 M.R.S.A. § 492(11).[4]

The statute specifically directs the Secretary to review each such nomination petition. 21 M.R.S.A. § 494. We find it was not the intention of the Legislature to limit the Secretary's duty to review petitions merely for those defects on the face of the petitions. Both the specific language of Title 21 and the statutory scheme indicated therein fully support this finding.[5]

In the instant case the Secretary of State reviewed the nomination petitions in question. He was required to determine whether or not the petitions contained signatures of voters

"equal to at least 3%, but not more than 6%, of the number of votes cast for Governor at the last gubernatorial election . . . ." 21 M.R.S.A. § 492(5).

In making this determination he had to exclude those signatures which were not those of "voters." 21 M.R.S.A. § 492(11)(A); *see* 21 M.R.S.A. § 1(41).

This he did.

The statute permitted him no alternative.

---

3. The parties have stipulated that the sole issue on appeal is, in their language:
"Did the Court below err in finding that the Secretary of State could take the actions appealed from, based on the original challenge filed by Representative Jalbert?"

4. The Secretary's unchallenged finding was to the effect that several of the petitions did not meet the requirements of subsection 5. By the express terms of the statute, such petitions are void.

5. Section 494 of Title 21 states in part:
"On receipt of a nomination petition, the Secretary of State shall review it. If it is incomplete or incorrect on its face, he shall advise the candidate or the person who certified it and allow him to correct it in accordance with the facts. . . . "
We read the requirement that the Secretary advise a candidate or the person who certified it [the petition] as to facial defects as serving the purpose of preserving nomination petitions which, though incomplete or incorrect on their face, can be amended so as to make them valid. For example, a signature on a petition which does not include the residence of the person signing such petition does not meet the requirements of 21 M.R.S.A. § 492(4). By the simple process of having the voter add his address, the petition becomes valid so far as that signature is concerned.

Upon counting the number of valid signatures, he determined they numbered less than the minimum required by subsection 5.

 Once this determination was reached, the statute controlled and the petitions were void as a matter of law. Thus, while Representative Jalbert's letter of June 10, 1976, may have been the impetus for the Secretary's review, whether the letter sufficiently "set forth the reasons" which would constitute a "challenge" pursuant to 21 M.R.S.A. § 494(2) is legally immaterial.

The petitions were void because the statute says they are void. All the Secretary of State did was discover the facts revealing the legal conclusion.

We hold that the Secretary of State acted properly in reviewing the questioned petitions and subsequently recognizing them as void since they had not met the requirements of 21 M.R.S.A. § 492(5).

Accordingly, the entry must be:

Appeal denied.

All Justices concurring.