2004 ME 127

**Dorothy M. MELANSON**

v.

**SECRETARY OF STATE et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 6, 2004.
Decided: Oct. 8, 2004.

Michael K. Mahoney (orally), Preti Flahery Beliveau Pachios & Haley, L.L.C., Portland, for plaintiff.

G. Steven Rowe, Attorney General, Phyllis Gardniner, Asst. Atty. Gen. (orally), Augusta, for appellee.

William H. Dale (orally), Jensen Baird Gardner & Henry, Portland, for intervenors.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

PER CURIAM.

[¶ 1] We have been asked to determine whether the Secretary of State erred in concluding that Ralph Nader and Peter Camejo should be included on the November presidential ballot. We conclude that he did not.

[¶ 2] Dorothy M. Melanson appeals from a judgment entered in the Superior Court (Kennebec County, *Studstrup, J.*) affirming a decision of the Secretary of State dated September 8, 2004. The Secretary's decision adopted the report and recommendations of a hearing officer of the Department of the Secretary of State, rejecting challenges to certain petition forms [1] circulated by supporters of Ralph Nader and Peter Camejo, candidates for the offices of President and Vice President of the United States, respectively.[2] Melanson appeals from that part of the decision regarding the Secretary's interpretation of 21–A M.R.S.A. § 353 (Supp.2003). She contends that the court erred as a matter of law in concluding that the nonparty nomination petition complied with the statutory requirement regarding the placement of party unenrollment certification. We affirm the decision of the Superior Court.

I. BACKGROUND

[¶ 3] In July 2004, nonparty nomination petition forms were circulated throughout Maine in support of presidential candidate Ralph Nader, his running mate, Peter Ca-

---

1. The form of a nomination petition is determined by the Secretary of State and "may contain as many separate papers as necessary...." 21–A M.R.S.A. § 354(1) (Supp. 2003).

2. These candidates, along with their proposed slate of electors as named on the petition, have intervened in this appeal.

mejo, and their slate of four presidential electors. The Secretary of State accepted the petition on August 16, 2004, based on a finding that the petition contained over 4000 valid signatures of Maine registered voters, and that the electors had met all the other statutory requirements and qualifications necessary for placement on November's general election ballot pursuant to 21–A M.R.S.A. §§ 351–355 (1993 & Supp. 2003). Melanson and another individual[3] challenged that decision in accordance with the procedure set forth in 21–A M.R.S.A. § 356 (1993). Melanson asserted that the petition was invalid for several reasons, such as the inclusion of an incorrect first name of an elector on several circulating petition forms, missing candidate consent forms, and what Melanson claimed were improper party unenrollment certifications.

[¶ 4] A two-day public hearing was conducted in response to this challenge. The hearing officer recommended to the Secretary that the challenge should be rejected and the candidates should be included on the ballot. The Secretary adopted the hearing officer's report and recommendations and issued a final decision dated September 8, 2004. The legal and practical result of the Secretary's decision is to include the Nader/Camejo ticket on the November ballot, although technically the votes are cast for the slate of electors supporting these candidates. *See* U.S. CONST. art II, § 1, cl. 3.

[¶ 5] Melanson appealed to the Superior Court pursuant to 21–A M.R.S.A. § 356(2)(D), setting forth four separate grounds for appeal, including an assertion that the petition did not comply with the statutory requirement that the municipal registrar or clerk certify, on the petition, that the person seeking nomination by petition, if enrolled, timely withdrew from and remained unenrolled in any qualified political party. 21–A M.R.S.A. § 353. The Superior Court agreed with the Secretary's conclusion that the elector candidates' use of separate forms entitled "Non–Party Presidential Elector Consent and Certification of Unenrollment" as part of the petition was appropriate and consistent with the statutory requirement. The court noted that "[f]or many years the Secretary has followed a practice that incorporates both the petition form and the consent and certification, though two documents, as one petition." In reliance on the deference historically given to administrators' interpretation of laws that they enforce, the court found that the "Secretary's interpretation of the statute provides the needed information," though not necessarily on the circulating petition forms. Such a method, the court concluded, balances the need to keep voters informed while protecting the interest of candidates in getting their names on the ballot.

## II. DISCUSSION

[¶ 6] Melanson argues that the Secretary incorrectly interpreted 21–A M.R.S.A. § 353 in concluding that the Nader/Camejo circulating petition forms offered to voters for their signature were valid although they did not contain certifications of party unenrollment. Instead, each certification was contained on a separate form drafted by the Secretary and considered by him to be a part of the petition itself.

[¶ 7] When the Superior Court acts as an intermediate court of appeals, we review directly the decision of the "tribu-

---

**3.** This individual participated at the administrative level, but only Melanson sought judicial review.

nal of original jurisdiction" for errors of law, abuse of discretion, or findings not supported by the record. *Hathaway v. City of Portland,* 2004 ME 47, ¶ 14 n. 1, 845 A.2d 1168, 1172.

█ [¶ 8] We review the interpretation of a statute directly for errors of law. *Town of Ogunquit v. Dep't of Pub. Safety,* 2001 ME 47, ¶ 7, 767 A.2d 291, 293. When construing a statute, we attempt to give effect to legislative intent by examining the plain meaning of the statutory language. *Charlton v. Town of Oxford,* 2001 ME 104, ¶ 10, 774 A.2d 366, 371. "If the statute is ambiguous, however, we review whether the agency's construction is reasonable." *Guilford Transp. Indus. v. Pub. Util. Comm'n,* 2000 ME 31, ¶ 11, 746 A.2d 910, 913.

[¶ 9] Section 353 states the qualification procedure for a candidate seeking nomination by petition:

A person who seeks nomination by petition qualifies by filing a nomination petition and consent as provided in sections 354 and 355. If enrolled, the person must also withdraw enrollment in a party on or before March 1st to be eligible to file a petition as a candidate in that election year, as provided in section 145. The registrar, or clerk at the request or upon the absence of the registrar, in the candidate's municipality of residence must certify to that fact *on the petition.*

21–A M.R.S.A. § 353 (emphasis added). The statute's language requiring certification "on the petition" is ambiguous when read in conjunction with section 354, stating that a petition "may contain as many separate papers as necessary." 21–A M.R.S.A. § 354(1) (Supp.2003).

[¶ 10] In carrying out the mandate of title 21–A, "[t]he Secretary of State may establish the form and content of all forms, lists, documents and records required by or necessary to the efficient operation of this Title." 21–A M.R.S.A. § 21 (1993). Allowing the unenrollment certification forms and the circulating petition forms to be collectively considered "the petition" certainly supports the efficient operation of the nomination process.

[¶ 11] We also find support in the legislative history of section 353. *See McNally v. Douglas Bros., Inc.,* 2003 ME 155, ¶ 9, 838 A.2d 1176, 1179 (stating that when a statute is ambiguous we may look to the legislative history for guidance). The Statement of Fact attached to the bill that enacted section 353 indicated that "[t]he bill amends the provision to require the registrar of a candidate's municipality to certify that a nonparty candidate was unenrolled by March 1st of the election year." L.D. 1461, Statement of Fact (117th Legis. 1995). This summary demonstrates that the existence of the certification, not its location, is the primary purpose of the certification requirement.

[¶ 12] In addition to the argument that the Secretary's interpretation is contrary to a plain language reading of the statute, Melanson argues that potential signatories are at a disadvantage because the purpose of certification is to inform the public of an elector candidate's party status prior to the distribution of a petition; we disagree. The purpose of the certification is to aid the Secretary in fulfilling his responsibilities in the election process by ensuring that any person who may be placed on a ballot meets the statutory requirements.

[¶ 13] The purpose of the certification, the legislative history, and the Secretary of State's authority to prescribe forms for all provisions of title 21–A pursuant to 21–A M.R.S.A. § 21, convinces us that the Secretary's interpretation of the statute is both reasonable and warranted when reading the statute in context. *See Town of*

*Ogunquit,* 2001 ME 47, ¶ 7, 767 A.2d at 293 (stating that we consider the full statutory scheme to achieve a harmonious result). Therefore, the certification form need not be circulated to the public, but must be presented to the Secretary as part of the petition.

[¶ 14] The acceptance of the petition comports with the fundamental principle, grounded in the United States Constitution, that " '[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.' " *Burdick v. Takushi,* 504 U.S. 428, 441, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (quoting *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964)); *see* U.S. CONST. art. II, § 1. The Maine Constitution similarly regards the right to vote as fundamental. ME. CONST. art. II; *Communist Party of the United States v. Gartley,* 363 A.2d 948, 949 (Me.1976) (highlighting the importance of a candidate's right to appear on the ballot).

[¶ 15] In summary, we defer to the reasoning of the Secretary of State in interpreting the statute to permit the certification to appear on an approved form deemed to be a part of the petition.

The entry is:

Judgment affirmed.