2009 ME 5

**MAINE HEALTH CARE ASSOCIATION WORKERS' COMPENSATION FUND**

v.

**SUPERINTENDENT OF INSURANCE et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 17, 2008.
Decided: Jan. 13, 2009.

Michael E. Saucier, Esq. (orally), Jason P. Donovan, Esq., Thompson & Bowie, LLP, Portland, ME, for the Maine Health Care Association Workers' Compensation Fund:

G. Steven Rowe, Attorney General, Thomas C. Sturtevant, Jr., Asst. Atty. Gen. (orally), Augusta, ME, for the Superintendent of Insurance.

Panel: SAUFLEY, C.J., and CLIFFORD,* ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

* Although not present at oral argument, Justice Clifford participated in this opinion. *See* M.R.App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

SAUFLEY, C.J.

[¶ 1] The Maine Health Care Association Workers' Compensation Fund appeals, pursuant to 5 M.R.S. § 11008 (2008) and M.R. Civ. P. 80C, from a judgment of the Superior Court (Kennebec County, *Jabar, J.*) affirming an order of the Superintendent of Insurance, Maine Bureau of Insurance (*Wake, HO*). The order compelled disclosure of information by the Fund to former members of the Fund in the course of an adjudicatory proceeding before the Superintendent. The Fund contends that the Superintendent erred as a matter of law in ordering the disclosure of the information because it is designated as confidential and privileged from discovery pursuant to 39-A M.R.S. § 403(15) (2008). We affirm the Superior Court's judgment.

## I. BACKGROUND

[¶ 2] The Fund is a tax-paying trust established for the purpose of administering a workers' compensation group self-insurance program for certain long-term care facilities and nursing homes in accordance with the Workers' Compensation Act of 1992, 39-A M.R.S. §§ 101–409 (2006).[1] Three former members terminated their participation in the Fund effective January 1, 2007. By both statute and administrative rule, each terminated member of a group self-insurer must provide the

group with capital necessary to fund that member's proportionate share of the group's exposure to the ninety-five percent confidence level. 39-A M.R.S. § 403(3)(C)(2) (2008); 6 C.M.R. 02 031 250–33 § III(E)(4) (1997). Accordingly, the Fund made an actuarial determination of its workers' compensation liabilities and levied proportionate supplemental assessments against the three former members in November of 2006. Each former member was provided with a one-page actuarial table supporting the assessment. By order dated January 17, 2007, the Bureau approved the Fund's security calculation.

[¶ 3] On February 14, 2007, pursuant to 24-A M.R.S. § 229(3) (2008), the former members requested a hearing to challenge the January 17 order, specifically alleging that the Fund had not followed appropriate methodologies in calculating the supplemental assessments. In their request for hearing, the former members requested documentation from the Fund that would allow them to "verify the methodology followed and ascertain the appropriateness of the supplemental funding requested." This requested documentation included, among other things, financial records of other, current Fund members, all of which had been supplied to the Superintendent as part of the approval process.[2]

---

1. The Act has since been amended, *see* 39 M.R.S. §§ 101–409 (2008), but the portions relevant to this opinion remain unchanged.

2. The requested information, as outlined in the former members' request for hearing, includes: (1) actuarial reports for 2003 through 2006; (2) standard premiums listed by Fund member for 1992 through 2006; (3) a calculation of the proportionate share for each Fund member by year from 1992 to 2006 compared with the aggregate standard premium for each of those years; (4) details of all Fund losses, including the name of the claimant and employer, paid losses, case reserves, and

incurred losses for the years 1992 through 2006 inclusive; (5) development of indicated loss reserves, projected ultimate losses, and expected losses, comparison of actual versus expected incurred loss, development of present value factors, summary of excess workers' compensation insurance, and discount factors applied and presumptions employed; and (6) accounting of all funds received from or returned by the Fund to each former member for the calendar years 2005, 2006, and 2007, including the date, amount of payment, purpose of payment, and invoice to which each payment relates.

[¶ 4] The Fund objected to the disclosure request, arguing that the documents are designated as confidential by section 403(15), that the information is protected as business or proprietary trade secrets, and that the former members had already received ample documentation allowing them to evaluate the accuracy of the assessments. On April 6, 2007, the hearing officer appointed by the Superintendent to adjudicate the dispute issued an order compelling discovery of the requested documents under a protective order, concluding that section 403(15) did not prohibit disclosure.[3] The order conditioned disclosure of "competitively sensitive" information to an "eyes of counsel and expert consultant only" basis.

[¶ 5] On April 9, 2007, the Fund filed a three-count complaint with the Superior Court,[4] appealing the hearing officer's discovery decision and seeking declaratory and injunctive relief. The Superior Court affirmed the hearing officer's order in all respects, concluding that "[t]he conditions issued by the hearing officer in its order on the motion to compel seem well calculated to protect the proprietary value of the evidence." The Fund timely filed this appeal.

## II. DISCUSSION

### A. Final Judgment Rule

 [¶ 6] We first note that the hearing officer's order compelling disclosure in this matter is not "final agency action," and we may dismiss an appeal sua sponte if we determine that it is interlocutory and taken from an agency decision

that is not final. *Brickley v. Horton,* 2008 ME 111, ¶ 9, 951 A.2d 801, 802; *see* M.R. Civ. P. 80C; 5 M.R.S. § 11001(1) (2008). However, pursuant to the "death knell" exception to the final judgment rule, interlocutory appeals are appropriate when " 'substantial rights of a party will be irreparably lost if review is delayed until final judgment.' " *In re Estate of Kingsbury,* 2008 ME 79, ¶ 5, 946 A.2d 389, 392 (quoting *Bruesewitz v. Grant,* 2007 ME 13, ¶ 8, 912 A.2d 1255, 1258).

[¶ 7] Here, the information sought pursuant to the discovery request is claimed by the Fund to be highly proprietary, confidential, and protected by the trade secret privilege. Disclosure pending a final action in the adjudicatory proceeding before the Superintendent would render moot any claims of absolute confidentiality, a concern made more acute by the fact that the former members are competitors with some members of the Fund. Accordingly, we conclude that the order compelling disclosure of material claimed to be protected by statute is immediately appealable pursuant to the "death knell" exception, and thus proceed to the merits of the Fund's appeal.

### B. Confidentiality of Requested Material

 [¶ 8] When a Superior Court acts as an intermediate appellate court reviewing agency acts pursuant to Rule 80C, we review the agency's decision directly. *Melanson v. Sec'y of State,* 2004 ME 127, ¶¶ 7–8, 861 A.2d 641, 643–44. Decisions made by the agency are re-

---

3. Upon appointment, the hearing officer acted as the Superintendent, pursuant to 24–A M.R.S. § 210 (2008).

4. Count I of the complaint alleged that the order compelling disclosure violated the Maine Freedom of Access Act, count II was an appeal of a final agency action pursuant to M.R. Civ. P. 80C, and count III sought a

declaratory judgment that the documents ordered to be disclosed are designated confidential by statute, are privileged as trade secrets, and are not subject to disclosure under the FOAA. A court order, on agreement of the parties, dismissed counts I and III, leaving only the Rule 80C appeal before the Superior Court for adjudication.

viewed for errors of law, abuse of discretion, or findings of fact not supported by the record. *Id.* When reviewing an agency's interpretation of a statute it administers, we look to the plain meaning of an unambiguous statute in order to give effect to the intent of the Legislature. *Guilford Transp. Indus. v. Pub. Utils. Comm'n,* 2000 ME 31, ¶ 11, 746 A.2d 910, 913.

■ [¶ 9] The contention by the Fund that the information requested by the former members is deemed confidential by statute is based on the following provision:

**Confidentiality of information.** All written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained, directly or after translation into a form susceptible of visual or aural comprehension, all information contained in the minutes of trustee meetings and all information relating to individual compensation cases, that a self-insurer is required to file with or make available to the superintendent under this section, section 404 or rules adopted pursuant to it are confidential and are not public records.

The confidential nature of this information does not limit or affect its use by the superintendent in administering this Act, including, but not limited to, communications with the service agent, the Workers' Compensation Board or the Maine Self–Insurance Guarantee Association.

39–A M.R.S. § 403(15).

[¶ 10] The statute is unambiguous in protecting records filed with the Superintendent from public requests made pursuant to the Maine Freedom of Access Act, *see* 1 M.R.S. § 408(1) (2007),[5] but is noticeably silent with regard to discovery requests between private litigants. We have previously placed great emphasis on express legislative language, or the lack thereof, when considering whether a statute provides for protection against discovery.[6] *See Pooler v. Me. Coal Prods.,* 532 A.2d 1026, 1028 (Me.1987); *Me. Sugar Indus., Inc. v. Me. Indus. Bldg. Auth.,* 264 A.2d 1, 5–6 (Me.1970); *see also* 8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2377, at 781 (McNaughton rev. 1961). The provision of section 403(15) indicating that material in the hands of the Superintendent is not a public record does not, by its terms, prevent restricted disclosure between private parties in the scope of an adjudicatory proceeding

---

5. Title 1 M.R.S. § 408(1) has since been amended, but the relevant language remains the same. P.L. 2007, ch. 501, § 1 (effective June 30, 2008) (codified at 1 M.R.S. § 408(1) (2008)).

6. The Legislature has, in other contexts, made a statutory privilege against discovery in litigation explicit. *See, e.g.,* 24 M.R.S. § 2510–A (2008) ("[A]ll professional competence review records are privileged and confidential and are not subject to discovery, subpoena or other means of legal compulsion for their release to any person or entity and are not admissible as evidence in any civil, judicial or administrative proceeding."); 24–A M.R.S. § 1420–N(6) (2008) ("[A]ny documents, materials or other information in the control or possession of the [Bureau of Insurance] that is furnished by an insurer or producer ... is confidential, is not subject to subpoena and is not subject to discovery or admissible in evidence in any private civil action...."); 24–A M.R.S. § 6807(7)(B) (2008) (stating that all information pertaining to an investigation of a settlement provider by the Superintendent of the Bureau of Insurance "[is] confidential by law and privileged, [is] not subject to subpoena and [is] not subject to discovery or admissible in evidence in any private civil action"); 24–A M.R.S. § 6818(6) (2008) (providing that evidence provided to the Superintendent pertaining to fraudulent viatical or life settlement acts is "privileged and confidential and is not a public record ... and is not subject to discovery or subpoena in a civil or criminal action").

between the Fund and its former members.

[¶ 11] Furthermore, there is no question that a hearing officer has the authority to compel disclosure of information between two private parties that is both relevant and necessary to an adjudicatory proceeding before the Superintendent. *See* 24-A M.R.S. §§ 210, 231, 232 (2008). The record before us contains no indication that the hearing officer exceeded that authority in this instance. The Fund conceded at oral argument that it did not address before the hearing officer the issue of what specific information should be protected, either under the statute or as a trade secret, and instead relied on a blanket theory of absolute confidentiality in its effort to preclude disclosure of any of the requested information. Lacking any such specific identification, the hearing officer acted more than reasonably in formulating the protective order, engaging in appropriate balancing between the former members' need for the information and the confidentiality concerns of the Fund. *Cf. Me. Sugar*, 264 A.2d at 6 (balancing the injury resulting from disclosure against the public interest in fair and just adjudication).

[¶ 12] The order, by its terms, accomplished three critical results. First, it prevented public disclosure of the records, thus effectuating the Legislature's directive that they are not public records. Second, it limited access to the records to counsel and experts, thereby minimizing the disclosure of information among market competitors. Finally, it leaves open the opportunity on the part of the Fund to identify going forward information that is "competitively sensitive between present or former members of the Fund." Nothing in this carefully balanced order violates the terms or the spirit of section 403(15). We affirm the judgment of the Superior Court.

The entry is:

Judgment affirmed.