MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2013 ME 51
Docket:      Was-12-499
Argued:      April 10, 2013
Decided:     May 23, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

RALPH NADER et al.

v.

THE MAINE DEMOCRATIC PARTY et al.


PER CURIAM

[¶1]   The Maine Democratic Party, the Democratic National Committee (DNC), Kerry-Edwards 2004, Inc., Dorothy Melanson, and Terry McAuliffe (collectively, MDP) appeal from the Superior Court's (Washington County, *Cuddy, J.*) denial of their motions to dismiss counts I-IV of a complaint filed by Ralph Nader and four of his presidential electors (collectively, Nader).[1]  Nader cross-appeals, challenging the dismissal of Counts V-VI of his complaint and requesting treble costs and attorney fees pursuant to M.R. App. P. 13(f).  We affirm the dismissal of Counts V-VI.  Because we conclude that the motion to dismiss Nader's complaint pursuant to Maine's anti-SLAPP statute, 14 M.R.S.A.

---

[1]  The four electors were Christopher Droznick, Nancy Oden, Joseph Noble Snowdeal, and Rosemary Whittaker, but Snowdeal withdrew his claims before the court entered judgment.

2

§ 556 (2003),[2] should have been granted, we vacate the judgment and remand to the Superior Court with instructions to dismiss the entirety of Nader's complaint against MDP.

## I. BACKGROUND

[¶2]  The following facts are alleged in Nader's pleadings and affidavits. *See Nader v. Me. Democratic Party (Nader I)*, 2012 ME 57, ¶ 33, 41 A.3d 551.

[¶3]  Ralph Nader was a candidate in the 2004 presidential election, with his vice-presidential running mate, the late Peter Miguel Camejo.  Prior to the election, there were various challenges to their inclusion on the ballot in at least seventeen states, including two complaints filed with Maine's Secretary of State.

[¶4]  One of the Maine complaints was filed by Benjamin Tucker, a registered Democrat affiliated with an organization known as "StopNader.com." The Tucker complaint challenged Nader's inclusion on the ballot on the ground that Nader's petition circulators "fraudulently concealed the identity of the candidate . . . and misled signers into signing the petition."  The Secretary of State dismissed the Tucker complaint on the merits.

[¶5]  The other Maine complaint was filed by Dorothy Melanson, then-chair of the state Democratic Party.  The Melanson complaint sought to invalidate

---

[2]  Title 14 M.R.S.A. § 556 has since been amended in ways not relevant to this appeal.  *See* P.L. 2011, ch. 559, § A-13 (effective Aug. 30, 2012) (codified at 14 M.R.S. § 556 (2012)).

Nader's nomination petitions on five grounds: (1) the petitions did not meet the requirements of 21-A M.R.S.A. §§ 352, 354(1)(B) (1993 & Supp. 2004),[3] because they improperly identified one of Nader's presidential electors, Joseph Noble Snowdeal, as "John Noble Snowdeal"; (2) the electors violated 21-A M.R.S.A. § 353 (Supp. 2004) by not certifying their unenrolled status "on the petition";[4] (3) Camejo violated 21-A M.R.S.A. § 353 by failing to unenroll as a Green Party member; (4) Nader and Camejo violated 21-A M.R.S.A. § 353 by failing to file a consent form; and (5) one or more of Nader's petition circulators violated 21-A M.R.S.A. § 354(7)(A) (1993) by falsely affirming that certain signatures were made in their presence.[5]

[¶6] After a hearing, the hearing officer recommended rejecting the challenges set forth in the Melanson complaint, and the Secretary of State adopted the recommendation. *Melanson v. Sec'y of State*, 2004 ME 127, ¶ 2, 861 A.2d

---

[3] Title 21-A M.R.S.A. § 354(1) has since been amended in ways not relevant to this appeal. *See* P.L. 2007, ch. 455, § 14 (effective Sept. 20, 2007) (codified at 21-A M.R.S. § 354(1) (2012)).

[4] At the time of Melanson's challenge, section 353 required a person seeking nomination by petition to withdraw enrollment in a party and have a registrar or clerk "certify to that fact on the petition." 21-A M.R.S.A. § 353 (Supp. 2004). The law has since been amended to require certification "on a form designed by the Secretary of State." *See* P.L. 2009, ch. 253, § 19 (effective Sept. 12, 2009) (codified at 21-A M.R.S. § 353 (2012)).

[5] At the time of Melanson's challenge, a violation of section 354(7) resulted in the invalidation of the entire nomination petition. *See* 21-A M.R.S.A. § 354(9) (1993). The law has since been amended so that in the absence of "fraud or a knowingly false statement by the circulator," only noncompliant signatures are invalidated. *See* P.L. 2009, ch. 253, § 21 (effective Sept. 12, 2009) (codified at 21-A M.R.S. § 354(9) (2012)). Title 21-A M.R.S.A. § 354(7)(A) has also since been amended, but in ways not relevant to this appeal. *See* P.L. 2009, ch. 253, § 20 (effective Sept. 12, 2009) (codified at 21-A M.R.S. § 354(7)(A) (2012)).

641. Melanson appealed the Secretary of State's decision on four of the five challenges. *Id.* ¶ 5. The Superior Court (Kennebec County, *Studstrup, J.*) considered the appeal on the merits and affirmed the decision. *Id.* Melanson appealed to this Court, and we affirmed the judgment. *See id.* ¶ 2.

[¶7] In November 2009, Nader filed a civil complaint against MDP, alleging (I) civil conspiracy; (II) conspiracy to commit abuse of process and wrongful use of civil proceedings/malicious prosecution; (III) abuse of process in Maine; (IV) wrongful use of civil proceedings in Maine; (V) abuse of process in other jurisdictions; and (VI) wrongful use of civil proceedings/malicious prosecution in other jurisdictions.[6] Paragraphs 29-134 of the complaint pleaded facts arising in several jurisdictions, including Maine, in support of these claims. Nader premised his Maine-related allegations against MDP on his contention that MDP directed the filing of both the Melanson and Tucker petition challenges. Regarding MDP's relationship to the Melanson challenge, Nader pointed to Melanson's position as the chair of the state Democratic Party, and her testimony before the hearing officer that the Democratic Party financed the challenge. As for MDP's connection to the Tucker petition challenge, Nader's complaint states "[o]n

---

[6] Nader's complaint named two additional defendants: Toby Moffett and The Ballot Project, Inc. The court (Washington County, *Cuddy, J.*) dismissed Nader's claims against The Ballot Project, Inc., although the docket erroneously states otherwise, and Nader does not challenge the dismissal. Moffett did not appeal the denial of his motions to dismiss.

information and belief" that the Tucker challenge was filed "at the direction of and in cooperation with Defendants DNC [and] Kerry-Edwards 2004," and points to the fact that the organization with which Tucker was affiliated, StopNader.com, shared an address with a California-based law firm that represented DNC.

[¶8] MDP filed a special motion to dismiss pursuant to Maine's anti-SLAPP statute, 14 M.R.S.A. § 556, as well as a motion to dismiss pursuant to M.R. Civ. P. 12(b).[7] In November 2010, the court (Washington County, *Cuddy, J.*) granted the special motion to dismiss, rendering the 12(b) motion to dismiss moot.

[¶9] Nader appealed the special dismissal. In April 2012, we announced a new standard for applying the anti-SLAPP statute and, accordingly, we vacated the judgment and remanded the case to the Superior Court to consider MDP's special motion to dismiss pursuant to the newly announced standard. *See Nader I,* 2012 ME 57, ¶¶ 3, 36, 38, 41 A.3d 551.

[¶10] On remand, the Superior Court concluded that Nader had satisfied the newly announced standard and denied MDP's special motion to dismiss. The court also deferred ruling on MDP's Rule 12(b) motion to dismiss Counts I-IV of Nader's complaint, but granted the motion as to Counts V and VI. This appeal followed.

---

[7] MDP's M.R. Civ. P. 12(b) motion requested dismissal based on theories of res judicata, failure to state a claim, standing, and personal jurisdiction.

6

## II. DISCUSSION

A.     MDP's Appeal of the Court's Denial of the Special Motion to Dismiss

[¶11]   MDP contends that the court erred in denying its special motion to dismiss Nader's claims because Nader failed to produce prima facie evidence that at least one of MDP's petitioning activities in Maine was devoid of factual or legal support.

[¶12]   Maine's anti-SLAPP statute permits defendants to file a special motion to dismiss civil claims against them that are based on the defendants' exercise of the constitutional right to petition.[8] *See* 14 M.R.S.A. § 556.  Despite the final judgment rule, we review "interlocutory appeals from denials of special motions to dismiss brought pursuant to the anti-SLAPP statute." *Schelling v. Lindell*, 2008 ME 59, ¶ 8, 942 A.2d 1226.  Our review is de novo.[9]

---

[8] "SLAPP" stands for "Strategic Lawsuit Against Public Participation." *Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶ 1, 41 A.3d 551.  Anti-SLAPP statutes, such as Maine's, provide a procedural mechanism "to dispose of baseless lawsuits that are brought not to vindicate the plaintiff's rights but to punish the defendant for exercising her constitutional right to petition the government, and to do so at an early stage before the defendant incurs great expense." *Id.* ¶ 42 (Silver, J., concurring).

[9] Although we have previously stated that review of a decision on a special motion to dismiss is for abuse of discretion or error of law, *see, e.g.*, *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 18, 772 A.2d 842, the standard of review is more accurately characterized as de novo.  At the first step of the anti-SLAPP analysis, the issue is whether the claims are based on the moving party's exercise of its right to petition, as defined by the anti-SLAPP statute. *See Nader I*, 2012 ME 57, ¶ 15, 41 A.3d 551.  This is a question of statutory interpretation and thus requires de novo review. *See Goudreau v. Pine Springs Rd. & Water, LLC*, 2012 ME 70, ¶ 11, 44 A.3d 315.  At the second step of the anti-SLAPP analysis, the court must determine whether the non-moving party has met a burden of production by way of its pleadings and affidavits. *See Nader I*, 2012 ME 57, ¶ 16, 41 A.3d 551.  De novo review is appropriate here, as well. When a court reviews pleadings and affidavits, rather than live testimony, no deference is required and de novo review is appropriate.  This conclusion is consistent with the de novo standard of review we apply in the summary judgment context, where we similarly review whether a court has erred in concluding that a

[¶13]   In deciding whether to grant a special motion to dismiss, courts undertake a two-step analysis.  *Nader I*, 2012 ME 57, ¶ 15, 41 A.3d 551.  At the first step, the party seeking special dismissal (the moving party) must demonstrate that the anti-SLAPP statute applies by showing that the claims against it are based on the exercise of that party's constitutional right to petition.  *Id.*  If the moving party establishes that the anti-SLAPP statute applies, the burden shifts to the non-moving party to satisfy the second step of the procedure.  *Id.* ¶ 16.

[¶14]  At the second step of the anti-SLAPP analysis, the court must dismiss the non-moving party's claims unless the non-moving party demonstrates, through the pleadings and affidavits, that the moving party's petitioning activity does not fall within the protection of the anti-SLAPP statute.  *Id.*  This requires prima facie evidence that at least one of the moving party's petitioning activities was "devoid of any reasonable factual support or any arguable basis in law and . . . caused actual injury to the [non-moving party]."  *Id.* ¶¶ 33, 36.  In *Nader I*, we also determined that in order for a Maine court to exercise jurisdiction in this case,

---

party has met a burden of production by examining paper-based submissions. *See Trott v. H.D. Goodall Hosp.*, 2013 ME 33, ¶¶ 11 n.5, 18-19, --- A.3d ---.  It is also consistent with the standard of review employed by several other courts in jurisdictions with anti-SLAPP statutes. *See, e.g.*, *Manufactured Home Cmtys., Inc. v. Cnty. of San Diego*, 655 F.3d 1171, 1176 (9th Cir. 2011); *Sherrod v. Breitbart*, 843 F. Supp. 2d 83, 84 n.2 (D.D.C. 2012); *Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 840 (Minn. 2010).

8

Nader will have to meet that burden with regard to at least one of MDP's petitioning activities in Maine. *See id.* ¶¶ 37-38.

[¶15] We concluded in *Nader I* that MDP met its burden at the first step of the anti-SLAPP analysis by showing that Nader's claims against it are based on MDP's alleged petitioning activities. *See id.* ¶ 28. We therefore proceed to the second step of the analysis, which requires us to (1) identify MDP's alleged petitioning activities in Maine, and then (2) determine whether Nader produced prima facie evidence that any of MDP's petitioning activities in Maine were devoid of factual or legal support and caused Nader actual injury. *See id.* ¶¶ 35-37.

1.    MDP's Alleged Petitioning Activities in Maine

[¶16] For purposes of the anti-SLAPP statute, a petitioning activity includes "any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding." 14 M.R.S.A. § 556. This definition is informed by the First Amendment, *see id.*, pursuant to which "[a] petition conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns," *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2495 (2011).

[¶17] Nader's Maine-based claims against MDP arise from three discrete petitioning activities. The first two are the Tucker and Melanson complaints to the

Secretary of State. Each complaint raised concerns regarding the propriety of Nader's nomination petitions and requested that the government address those concerns by rejecting the nomination petitions. Therefore, each falls squarely within the boundaries of petitioning activity, as contemplated by the First Amendment, *see Guarnieri*, 131 S. Ct. at 2495, and thus the anti-SLAPP statute, *see* 14 M.R.S.A. § 556. Although the Melanson complaint presented five discrete challenges to Nader's inclusion on the ballot, the individual grounds for challenging Nader's inclusion on the ballot are not themselves discrete petitioning activities because they are part of a single request for relief. *See Guarnieri*, 131 S. Ct. at 2495. The third discrete petitioning activity is Melanson's appeal from the Secretary of State's decision to the Superior Court and to this Court, because the relief requested differed from the relief requested in the Melanson and Tucker complaints. The initial complaints to the Secretary of State sought Nader's removal from the Maine ballot, whereas the appeals requested that the courts vacate the Secretary of State's decision. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007) (recognizing administrative appeal as a petitioning activity for purposes of the First Amendment).

2. Nader's Burden of Production

[¶18] Having identified MDP's alleged petitioning activities in Maine, we turn to the question of whether Nader presented the trial court with prima facie

10

evidence that any of MDP's Maine petitioning activities was devoid of factual or legal support and caused Nader actual injury. *See Nader I*, 2012 ME 57, ¶ 38, 41 A.3d 551. We address each of MDP's alleged Maine petitioning activities in turn.

a. Tucker Complaint

[¶19] Nader did not meet his burden to present the trial court with prima facie evidence that MDP's petitioning activity with regard to the Tucker complaint was devoid of factual or legal support, for two reasons. First, Nader produced insufficient evidence to show that it was MDP who engaged in petitioning activity through the Tucker complaint, let alone that petitioning activity by MDP was devoid of factual or legal support. Instead, he asserts "[o]n information and belief, Mr. Tucker and StopNader.com prepared and filed their complaint at the direction of and in cooperation with Defendants DNC [and] Kerry-Edwards 2004," and that despite StopNader.com's purported lack of political affiliation, it shared an address with a law firm that represented DNC. However, as is true in the summary judgment context, a party cannot satisfy its burden to produce prima facie evidence with averments made "on information and belief." *See Bay View Bank, N.A. v. Highland Golf Mortgagees Realty Trust*, 2002 ME 178, ¶ 11, 814 A.2d 449 ("To avoid a summary judgment, the nonmoving party must do more than state its affirmative defense; it must offer admissible evidence in support of that defense.").

Nor does the evidence of the shared address constitute prima facie evidence that MDP directed the filing of the Tucker complaint. *See Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 19, 60 A.3d 759 (concluding that to meet a burden of production, a party must produce evidence "sufficient to allow a fact-finder to make a factual determination without speculating").

[¶20]  Second, even if Nader's evidence had been sufficient to establish a legally significant relationship between Tucker and MDP, Nader did not meet his burden to provide the trial court with prima facie evidence that the Tucker complaint was devoid of factual or legal support.  Although we can speculate that the Tucker complaint itself, a transcript of the proceedings before the hearing officer, the complete hearing officer's report[10] or affidavit, or the Secretary of State's decision might have provided prima facie evidence that the Tucker complaint was devoid of factual or legal support, Nader did not incorporate any of these documents into his pleadings or affidavits.

---

[10]  Nader submitted to the trial court four pages of the hearing officer's report, identified as pages two, three, four, and ten, which include only a portion of the hearing officer's findings.  At oral argument, we did not request or authorize Nader to supplement the record by providing us with a copy of the hearing officer's report in its entirety.  Following oral argument, Nader filed a copy of the hearing officer's report, requesting that we take judicial notice of the report pursuant to M.R. Evid. 201.  Although we may take judicial notice of the hearing officer's report, *see* M.R. Evid. 201 and M.R. App. P. 5(e), its contents do not assist Nader in this appeal.  Our review focuses on whether Nader presented the *trial court* with prima facie evidence that either the Melanson or Tucker complaints were devoid of factual or legal support, and he did not present the trial court with the hearing officer's report in its entirety.

### b. Melanson Complaint

[¶21] Nader also failed to present the trial court with prima facie evidence that the Melanson complaint was devoid of factual or legal support. Although a petitioning activity can be so lacking in factual and legal merit that it is, as a matter of law, devoid of factual or legal support, this cannot be the case where the undisputed facts show a violation of a statutory requirement. Here, it is undisputed that Nader submitted nomination petitions listing an incorrect name for an intended elector—"John Noble Snowdeal" instead of "J. Noble Snowdeal" or "Joseph Noble Snowdeal." Although the Secretary of State acted within its discretion in accepting the petitions despite that technical defect, it would have also been within the Secretary's discretion to reject the petitions on the basis of that defect. *See* 21-A M.R.S.A. §§ 3, 352, 354(1)(B), 356(1) (1993 & Supp. 2004)[11] (authorizing the Secretary of State to reject a challenged nomination petition on the ground that it is not clear that the petition lists a presidential elector who is "a resident of and a voter in the electoral division he seeks to represent on the date established for filing nomination petitions in the year he seeks election").

[¶22] In addition, although one of Nader's affidavits asserts that there was no testimony before the hearing officer to provide factual support for the Melanson

---

[11]  Title 21-A M.R.S.A. § 3 has since been amended in ways not relevant to this appeal. *See* P.L. 2009, ch. 538, § 2 (effective July 12, 2010) (codified at 21-A M.R.S. § 3 (2012)).

complaint, that assertion does not establish that there was no evidence of *any* kind presented to support the Melanson complaint. We again note that Nader had the burden of production at the second step of the anti-SLAPP procedure, and he failed to incorporate into his pleadings any of the documents that might have assisted him in meeting that burden, such as a transcript of the proceedings, the entirety of the hearing officer's report, or the Secretary of State's decision.

[¶23] The Melanson complaint, although ultimately unsuccessful, was not devoid of factual or legal support.

### c. Judicial Appeals

[¶24] Similarly, Nader did not provide the trial court with prima facie evidence that Melanson's request for judicial review was devoid of factual or legal support. On the contrary, the decisions of both the Superior Court and this Court demonstrate that Melanson's appeals had some factual or legal basis. Although the Superior Court concluded that the Secretary of State did not err in accepting Nader's nomination petitions, it acknowledged that the nomination petitions did not comply with the literal requirements of 21-A M.R.S.A. § 353. *Melanson*, 2004 ME 127, ¶ 5, 861 A.2d 641. Similarly, on appeal, we acknowledged that section 353 was ambiguous and required legal analysis. *See id.* ¶ 5. These appeals did not lack a basis in law.

14

[¶25]  Because we conclude that Nader failed to meet his burden to present the court with prima facie evidence that MDP's petitioning activities in Maine were devoid of factual or legal support, we conclude that MDP's special motion to dismiss should have been granted.  *See Nader I*, 2012 ME 57, ¶ 37, 41 A.3d 551. Accordingly, we need not address MDP's remaining arguments or Nader's motion for treble costs and attorney fees.

B.      Nader's Cross-appeal of the Court's Dismissal of Counts V and VI

[¶26]  Nader cross-appeals the court's M.R. Civ. P. 12(b) dismissal of counts V and VI of his complaint, concerning abuse of process and wrongful use of civil proceedings/malicious prosecution in jurisdictions other than Maine.  However, we need not reach the merits of Nader's cross-appeal.  In *Nader I*, we explained that "[i]f Nader fails to make a prima facie case that any of MDP's . . . petitioning activities in Maine were devoid of any reasonable factual support or arguable basis in law, the *action* must be dismissed, as there would be no basis for the courts of the State of Maine to assert jurisdiction over actions that occurred only in other states."  *Id.* (emphasis added).  Because we have concluded that Nader failed to meet this burden, the remaining counts are properly dismissed, and we need not reach the merits of Nader's cross-appeal.  *See id.*

The entry is:

> Judgment affirmed with respect to the dismissal of Counts V-VI. Judgment vacated with respect to all other counts, and remanded to the Superior Court for entry of a judgment dismissing the complaint.

---

**On the briefs:**

Stephen E.F. Langsdorf, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Augusta, for appellants The Maine Democratic Party, The Democratic National Committee, Kerry-Edwards 2004, Inc., Dorothy Melanson, and Terry McAuliffe

Harold Burbank, II, Esq., Canton, Connecticut, Lynne A. Williams, Esq., Bar Harbor, and Oliver B. Hall, Esq., Washington, District of Columbia, for appellees Ralph Nader, Christopher Droznick, Nancy Oden, and Rosemary Whittaker

**At oral argument:**

Stephen E.F. Langsdorf, Esq., for appellants The Maine Democratic Party, The Democratic National Committee, Kerry-Edwards 2004, Inc., Dorothy Melanson, and Terry McAuliffe

Oliver B. Hall, Esq., for appellees Ralph Nader, Christopher Droznick, Nancy Oden, and Rosemary Whittaker

Washington County Superior Court docket number CV-2009-57
FOR CLERK REFERENCE ONLY