## DAVRIC MAINE CORPORATION

### v.

### MAINE DEPARTMENT OF TRANSPORTATION.

Supreme Judicial Court of Maine.

Argued Jan. 22, 1992.

Decided April 14, 1992.

Edward S. MacColl (orally), F. Jay Meyer, Thompson, McNaboe, Ashley & Bull, Portland, for plaintiff.

John C. Hunt (orally), Susan C. Cookson, Asst. Attys. Gen., Dept. of Transp., Augusta, for defendants.

Before McKUSICK, C.J.,* and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Davric Maine Corporation (Davric) appeals from a judgment rendered by the Superior Court (Cumberland County, *Perkins, J.*) affirming the denial by the Maine Department of Transportation (Department) of Davric's request to inspect documents relating to the Department's purchase of certain properties in connection

---

* McKusick, C.J. sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

with a highway construction project. Davric argues that the requested documents are public records and subject to disclosure under the Freedom of Access Act, 1 M.R.S.A. §§ 401–410 (1989 & Supp.1991). We agree with the Superior Court that such documents are designated confidential by 23 M.R.S.A. § 63 (1992) and, pursuant to 1 M.R.S.A. § 402(3)(A), are excepted from the definition of "public records." Therefore, they are not subject to disclosure. Accordingly, we affirm the judgment.

The Department is engaged in a project to construct a new interchange on the Maine Turnpike in Scarborough with a connecting road leading to U.S. Route 1, and has acquired certain real estate through its Right of Way Division as part of the project. Davric is the owner and operator of Scarborough Downs Race Track, located in the vicinity of the project. The Department plans to acquire some of Davric's land as part of the project.

By letter dated February 26, 1991, Davric, through its counsel, requested access to Department documents relating to the purchase of land for the proposed connector spur from Exit 6 of the Turnpike to U.S. Route 1. Relying on the Freedom of Access Act, the letter requests

> the opportunity to inspect and copy any and all records in [the Department's] possession relating to the purchase of any real estate acquired by the Maine Turnpike Authority, the Department of Transportation or any other agency or authority of the State of Maine for the construction of the proposed new Exit 6 of the Maine Turnpike in Scarborough, Maine and the turnpike spur intended to connect the proposed exit with United States Route 1 in Scarborough, including without limitation, purchase and sale agreements, deeds, cancelled checks, correspondence, transfer tax forms.

The Department denied the request, relying on 23 M.R.S.A. § 63. Davric filed a timely complaint in Superior Court pursuant to 1 M.R.S.A. § 409(1) (1989) and M.R.Civ.P. 80B. The court denied Davric's appeal and the appeal to this court followed.

Section 408 of the Freedom of Access Act provides in pertinent part:

> Except as otherwise provided by statute, every person shall have the right to inspect and copy any public record during the regular business hours of the custodian or location of such record....

"Public records" are broadly defined[1] and would include the materials requested by Davric from the Department unless they have been designated confidential by statute. *See* 1 M.R.S.A. § 402(3)(A) (record designated confidential by statute exempt from disclosure).

23 M.R.S.A. § 63 provides in pertinent part:

> The records and correspondence of the right-of-way division of the department relating to negotiations for and appraisals of property, pending the final settlement for all claims on the project to which they relate and the records and data of the said department relating to engineering estimates of costs on projects to be put out to bid, shall be confidential, and shall not be open for public inspection, except that the records and correspondence of the right-of-way division relating to negotiations for and appraisals of property shall be open for public inspection after 9 months following the completion date of the project....

Section 63 is an exception to the Freedom of Access Act. Davric's argument that it is entitled to the documents it requested is based on the broad construction given to the Freedom of Access Act, *see Wiggins v. McDevitt,* 473 A.2d 420, 422 (Me.1984), and the narrow construction given to exceptions to the Act. *Id.* at 423. Davric notes

---

**1.** The Act defines "public records" as
any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained ... that is in the possession or custody of an agency or public official of this State ... and has been received or prepared for use in connection with the transaction of public or governmental business....

1 M.R.S.A. § 402(3) (Supp.1991).

that section 63 specifically refers only to records relating to negotiations and appraisals as being confidential and, drawing a distinction between appraisals, negotiations, and acquisitions as separate stages in a highway project, he argues that documents such as purchase and sale agreements, deeds, cancelled checks, and transfer tax forms are records of acquisition, as opposed to negotiation or appraisal and, therefore, not exempt. We decline to read section 63 in such a narrow fashion.

■ In construi:.g the meaning of a statute, we first look to the language itself to determine the legislative intent. *Bangor Hydro–Electric Co. v. Board of Envtl. Protection*, 595 A.2d 438, 442 (Me.1991). The legislature addressed confidentiality of highway commission records on a project-wide basis, only allowing release of records pertaining to individual parcels 9 months following the completion of the *entire* project. The language of the statute evidences an intent to protect the Department's bargaining position during its negotiations with property owners.[2] Section 63 speaks in terms of confidentiality of records "pending the final settlement for all claims on the project." The language reflects the reality of Department practice.[3] It is clear from the affidavit of Joseph Linscott, III, Chief of the Department's Right of Way Division, that property is negotiated for and acquired on a project-wide basis and that the negotiations for and acquisition price of one property in a project affects, or at least has great potential to affect, negotiations for property in the entire project. Construing the statute to limit its protection to records directly related to appraisals and negotiations only, and to require disclosure of what Davric refers to as records of acquisition prior to the completion of the project would defeat the very purpose of the statute.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** Section 63 was enacted simultaneously with the Right to Know Law, predecessor to the Freedom of Access Act, to ensure that records of the Right of Way Division of the Department (formerly the Highway Commission), and other sensitive records the legislature wanted to protect, were shielded from the broad sweep of the Act. *See* P.L.1959, chs. 219, 223. Also protected by the enactment of P.L.1959, ch. 223, were certain records of the State Police, the Board of Arbitration and Conciliation, the Commissioner of Labor and the Insurance Department.

**3.** The Department's construction of section 63 is evidence of their administrative practice. We accord deference to an administrative agency's construction of a statute administered by it and will uphold such an interpretation unless the statute plainly compels a contrary result. *Senty v. Board of Osteopathic Examination & Regulation*, 594 A.2d 1068, 1072 (Me.1991).