MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 74
Docket:        Han-15-95
Submitted
 On Briefs:    October 21, 2015
Argued:        April 6, 2016
Decided:       May 19, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
               HUMPHREY, JJ.


TERRENCE E. PINKHAM

v.

DEPARTMENT OF TRANSPORTATION


GORMAN, J.

[¶1]  Terrence E. Pinkham appeals from a judgment entered by the Superior Court (Hancock County, *R. Murray, J.*) after a jury trial, awarding him $41,500 as just compensation for the Maine Department of Transportation's (the MDOT) taking of a portion of his property by eminent domain for a road improvement project.[1]  Pinkham contends that the court erred by ruling that the MDOT was not required to provide in discovery those portions of its appraiser's report appraising other properties taken for the project pursuant to 23 M.R.S. § 63 (2015).  We agree, and vacate the judgment.

---

[1]  Amicus curiae briefs were filed by the Maine Turnpike Authority, the Maine Freedom of Information Coalition and New England First Amendment Coalition, and the Maine Trial Lawyers Association and American Civil Liberties Union of Maine Foundation.

## I. BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to Pinkham, as the prevailing party, the jury rationally could have found the following facts. *See Caruso v. Jackson Lab.*, 2014 ME 101, ¶ 2, 98 A.3d 221.  By notice provided in May of 2009, and amended in July of 2010, the MDOT informed Pinkham that it was taking by eminent domain a portion of Pinkham's property abutting Route 1A in Ellsworth in order to widen the road.  *See* 23 M.R.S. § 153-B (2015).  The taking included a seventeen-foot-wide strip of land running alongside the highway, together with associated drainage easements.

[¶3]  The MDOT had the property appraised by Michael Moniz, a certified real estate appraiser.  *See* 23 M.R.S. § 153-B(2).  The MDOT provided Pinkham with a copy of those portions of Moniz's appraisal report that applied to Pinkham's property, and then made Pinkham an offer of "just compensation" for the taking as required by 23 M.R.S. § 155 (2015).  After Pinkham rejected the offer, the matter was referred to the State Claims Commission.  *See* 23 M.R.S. §§ 155, 156 (2015).  Ultimately, the MDOT paid Pinkham a total of $13,609 for the taking.

[¶4]  In December of 2012, Pinkham challenged the Commission's decision by filing a complaint in the Superior Court for de novo review of the matter.[2]

---

[2]  Pinkham also filed an eight-count complaint alleging that the MDOT directed water onto Pinkham's property, causing damage.  The jury found in favor of MDOT on that complaint, and Pinkham does not challenge the judgment entered on that portion of the verdict.

*See* 23 M.R.S. § 157 (2015). Soon after, Pinkham requested that the MDOT produce copies of Moniz's appraisals of all of the properties acquired as part of the widening project. The MDOT objected on the ground that "the information concerning the negotiations for and appraisals of property acquired" for the widening project was confidential pursuant to 23 M.R.S. § 63. After a hearing, the court (*A. Murray, J.*) ordered that the MDOT was "protected from producing any assessments, appraisals, [and] settlement/transaction documents relating to the project in question" pursuant to section 63 because the widening project had not yet been completed.

[¶5] The court conducted a jury trial on November 5 to 7, 2014. Pinkham testified that he suffered a loss in value to his property of $1,375,000 as a result of the taking. Moniz was designated as the MDOT's expert witness to testify about "the value of the property rights acquired from [Pinkham]"; over Pinkham's objection, Moniz testified that Pinkham's property lost $13,000 in value as a result of the taking. The parties stipulated, and the jury was informed, that the MDOT had previously paid Pinkham $13,600. The jury returned a unanimous verdict awarding Pinkham $41,500 as just compensation for the taking. The court entered

4

a judgment on the verdict, which it later amended to offset the damages amount by the $13,600 the MDOT had already paid Pinkham. Pinkham appeals.[3]

## II. DISCUSSION

### A. Confidentiality and Privilege

[¶6] Pinkham contends that the trial court erred by ruling that Moniz's appraisal report, except as it pertained to Pinkham's property, was confidential pursuant to 23 M.R.S. § 63. We examine section 63 by first evaluating its plain language. *See Semian v. Ledgemere Transp., Inc.*, 2014 ME 141, ¶ 8, 106 A.3d 405. If that plain language is unambiguous, we afford the provision that plain meaning; if the statute is ambiguous, we will look beyond its plain language to other indicia of the Legislature's intent in enacting it, including its legislative history. *Id.*

[¶7] The MDOT, as well as the Maine Turnpike Authority, encourage us to consider the statute with deference to the MDOT's interpretation. If a statute is ambiguous, we afford deference to an agency's interpretation of a statute it administers when the issue is a matter within that agency's expertise. *Davric Me. Corp. v. Me. Dep't of Transp.*, 606 A.2d 201, 203 n.3 (Me. 1992). In evaluating 23 M.R.S. § 63 in this matter, however, we must consider notions of discovery;

---

[3] Although the Superior Court's judgment was in Pinkham's favor, Pinkham has standing to challenge the judgment because the amount of the judgment is considerably less than that sought by Pinkham, and the judgment therefore did not afford him all of the relief requested in his pleadings. *See Sevigny v. Home Builders Ass'n of Me.*, 429 A.2d 197, 201 (Me. 1981).

privilege; and the intersection of section 63 with the Freedom of Access Act, 1 M.R.S. §§ 400-414 (2015). These are not areas within the MDOT's expertise, and therefore we do not afford deference to the MDOT's interpretation on these points. *See Guilford Transp. Indus. v. Pub. Utils. Comm'n*, 2000 ME 31, ¶ 10, 746 A.2d 910 ("[W]hen the legal issue decided by the agency is an issue in which the courts have particular competence, there is no reason for the court to defer to the agency.").

[¶8] Section 63 provides in its entirety as follows:

### § 63. Confidentiality of records held by the [MDOT] and the Maine Turnpike Authority

**1. Confidential records.** The following records in the possession of the [MDOT] and the Maine Turnpike Authority are confidential and may not be disclosed, except as provided in this section:

> **A.** Records and correspondence relating to negotiations for and appraisals of property; and

> **B.** Records and data relating to engineering estimates of costs on projects to be put out to bid.

**2. Engineering estimates.** Engineering estimates of total project costs are public records after the execution of project contracts.

**3. Records relating to negotiations and appraisals.** The records and correspondence relating to negotiations for and appraisals of property are public records beginning 9 months after the completion date of the project according to the record of the [MDOT] or Maine Turnpike Authority, except that records of claims that have

been appealed to the Superior Court are public records following the award of the court.

23 M.R.S. § 63. Section 63 therefore deems certain of the MDOT's records "confidential" and sets out when that confidentiality is no longer in place.[4] 23 M.R.S. § 63.

[¶9] Although section 63 does not define "confidentiality" or specify its scope, the Legislature has already defined confidentiality for purposes of all Maine statutes—in Maine's Freedom of Access Act (FOAA), 1 M.R.S. §§ 400-414. FOAA was enacted in service of the public's interest in holding its government accountable by requiring that "public actions be taken openly." *MaineToday Media, Inc. v. State*, 2013 ME 100, ¶ 8, 82 A.3d 104 (quotation marks omitted); *see* 1 M.R.S. § 401. To that end, FOAA sets out the general rule as to documents that "[e]xcept as otherwise provided by statute, a person has the right to inspect and copy any public record in accordance with this section within a reasonable

---

[4] The record suggests—and the MDOT does not dispute—that construction on the widening project was complete in 2011. Despite that completion, however, Pinkham does not contend on appeal that the information he seeks is no longer confidential because the project has been complete for nine months or more. Thus, we do not address the timeliness of the MDOT's assertion of confidentiality. *See Estate of Hoch v. Stifel*, 2011 ME 24, ¶ 38, 16 A.3d 137 (noting that "issues not raised or briefed on appeal are deemed abandoned or unpreserved"). Nevertheless, we note that the MDOT's position at oral argument was that a project is not complete as long as *any* litigation relating to the project remains pending. The MDOT's interpretation would preclude any person from being the beneficiary of such information for as long as it takes to resolve any single party's challenge to a determination of just compensation. Although we have been deferential to the MDOT's determinations of when a project is complete, *see Davric Me. Corp. v. Me. Dep't of Transp.*, 606 A.2d 201, 203 & n.3 (Me. 1992), the MDOT's argument effectively allows it to maintain the confidentiality of records for as long as a party would care to see them. As we noted in *Davric*, "[t]he language of the statute evidences an intent to protect the Department's bargaining position during its negotiations with property owners." *Id.* at 203. The negotiations with Pinkham ended long before this litigation.

time of making the request to inspect or copy the public record."[5]   1 M.R.S. § 408-A.  Excepted from the definition of "public records" is a list of twenty-two types of materials to which the general disclosure requirements of FOAA do not apply.  1 M.R.S. § 402(3)(A)-(U); *see Guy Gannett Publ'g Co. v. Univ. of Me.*, 555 A.2d 470, 471 (Me. 1989) (stating, pursuant to 1 M.R.S. § 401,  that FOAA "should be liberally construed and applied to promote its underlying purpose" of open government, and that exceptions to public disclosure must be strictly construed (quotation marks omitted)); *Wiggins v. McDevitt*, 473 A.2d 420, 422 (Me. 1984) ("It is apparent that the legislature sought to avoid uncertainty by enacting a very broad, all-encompassing definition [of 'public records'] subject only to specific exceptions. . . .  It leaves little room for qualification or restriction.").

[¶10]   Among the exceptions to the definition of "public records," and therefore not subject to public disclosure despite otherwise meeting the definition

---

[5]  FOAA broadly defines "public records" as

> any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained, directly or after translation into a form susceptible of visual or aural comprehension, that is in the possession or custody of an agency or public official of this State or any of its political subdivisions, or is in the possession or custody of an association, the membership of which is composed exclusively of one or more of any of these entities, and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business.

1 M.R.S. § 402(3) (2015).  There can be no dispute that the MDOT's records—and specifically, Moniz's complete appraisal report—meet these requirements of a public record.

of "public records," are "[r]ecords that have been designated *confidential* by statute." 1 M.R.S. § 402(3)(A) (emphasis added). FOAA defines confidentiality by explaining, "'Public records exception' or 'exception' means a provision in a statute or a proposed statute that declares a record or a category of records to be confidential or otherwise not a public record for purposes of subchapter 1." 1 M.R.S. § 431(1) (2015). Likewise, in section 63, the Legislature has used "public records" when referring to the time at which the information at issue is no longer "confidential." 23 M.R.S. § 63(2) (providing that engineering estimates "are public records after the execution of project contracts"); 23 M.R.S. § 63(3) (stating that negotiation and appraisal documents become "public records beginning 9 months after the completion date of the project according to the record of the [MDOT]" or, for "records of claims that have been appealed to the Superior Court," the information constitutes "public records following the award of the court"). Section 63's provision of confidentiality means that—during the limited periods of time for which section 63 provides—the MDOT is not required to disclose the information at issue in response to a FOAA request.

[¶11] Pinkham's request for the production of Moniz's entire appraisal report was not pursuant to FOAA, however, and therefore the provision of confidentiality in section 63 provides no basis to preclude disclosure of the

information to Pinkham.  Instead, Pinkham seeks the information as discovery in the context of this litigation.

[¶12]  Whereas FOAA governs the disclosure of non-confidential public information, discovery regards the disclosure of information—which may be confidential—within the closed universe of litigation.  The Maine Rules of Civil Procedure are intended to "secure the just, speedy and inexpensive determination of every action."  M.R. Civ. P. 1.  To that end, liberal discovery is encouraged as a means to "eliminate the sporting theory of justice and to enforce full disclosure between the parties."  *St. Paul Ins. Co. v. Hayes*, 2001 ME 71, ¶ 8, 770 A.2d 611 (quotation marks omitted).

[¶13]  Notwithstanding these broad purposes, discovery is not a limitless mechanism to obtain information.  It is constrained by principles of relevance and privilege, of which the court is the final arbiter.  Pursuant to M.R. Civ. P. 26(b)(1), "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ."  Relevant information is information that "has any tendency to make a fact more or less probable than it would be without the evidence" and is "of consequence in determining the action."  M.R. Evid. 401.  Privileged information is information that, although it may be relevant, is deemed neither

discoverable nor admissible at trial. "Rules of privilege are designed to keep out some portion of the truth in order to foster relationships that as a matter of social policy are deemed to deserve protection." Field & Murray, *Maine Evidence* § 501.1 at 206 (6th ed. 2007); *see* M.R. Evid. 501; *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 518 (D.C. Cir. 1996) (stating that information is "presumptively discoverable," except that privileged information is "presumptively not discoverable").

[¶14]   In seeking to avoid providing Moniz's full appraisal report to Pinkham as discovery in the context of this litigation, the MDOT convinced the Superior Court that the appraisal information was not just confidential, but also privileged.   Section 63, however, unlike the numerous statutes for which the Legislature has expressly granted privilege in a wide variety of circumstances, is entirely devoid of any language suggesting that it provides for privilege.  *E.g.*, 5 M.R.S. § 200-H(6) (2015) (designating certain records "confidential and . . . not subject to subpoena, discovery or introduction into evidence in a civil or criminal action"); 22 M.R.S. § 8754(3) (2015) (stating that certain records are "[p]rivileged and confidential" and defining "[p]rivileged and confidential" to mean not subject to FOAA; not subject to "discovery, subpoena or other means of legal compulsion for its release to any person or entity"; and not "[a]dmissible as evidence in any civil, criminal, judicial or administrative proceeding"); 32 M.R.S. § 2599 (2015)

(declaring some records "confidential and . . . exempt from discovery without a showing of good cause"). FOAA itself also contains a separate public records exception for privileged information. 1 M.R.S. § 402(3)(B). At argument, the Department's counsel acknowledged that there is no relationship between the MDOT and the property owners from whom it is taking property that, as a matter of social policy, might be deemed to "deserve protection." Field & Murray, *Maine Evidence* § 501.1 at 206.

[¶15] We are not persuaded by the MDOT's contention that the "and may not be disclosed" language in section 63 somehow affords a privilege. It contains none of the language regarding discovery, admissibility, privilege, legal proceedings, subpoena, evidence, and the like that characterize other provisions of privilege. Given the intersection of section 63 with FOAA, the phrase "and may not be disclosed" supplies an operational definition of "confidential" that invokes the precise language of FOAA. *See* 1 M.R.S. § 402(3)(K), (L), (Q) (defining, as public records exceptions to FOAA, when certain information "will be withheld from disclosure" or from "further disclosure"); *see also* 1 M.R.S. § 432(2)(D) (2015) (regarding the "public interest in the disclosure of records"); 1 M.R.S. § 434(2)(D) (2015) (same).

[¶16] In the absence of any such language in section 63, we conclude that the statute does not render Moniz's entire appraisal report privileged information

12

as a matter of law.[6] That information was discoverable, even if protected from further release, as long as it comported with the relevance requirement of M.R. Civ. P. 26, which we examine next.

B.   Relevance

[¶17]  The MDOT argues that even if the information is not exempt from discovery pursuant to section 63, it is not relevant to the determination of just compensation, and therefore was properly excluded from discovery.[7] We review the court's decisions regarding the relevance of requested discovery for clear error,

---

[6]  Our decisions in prior cases interpreting 23 M.R.S. § 63 (2015) do not contradict this conclusion. We have twice considered the application of section 63, but only as to the denial of FOAA requests rather than in the context of a claim of privilege. *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶¶ 1, 10, 754 A.2d 353; *Davric*, 606 A.2d at 202. Moreover, in other contexts, we have noted the distinction between confidentiality and privilege. *See Me. Health Care Ass'n Workers' Comp. Fund v. Superintendent of Ins.*, 2009 ME 5, ¶¶ 10 & n.6, 11, 962 A.2d 968 (interpreting a confidentiality statute to protect information from a FOAA request, but noting that the statute was otherwise "noticeably silent with regard to discovery requests between private litigants" and stating that a "confidential" record still may be subject to "restricted disclosure between private parties in the scope of an adjudicatory proceeding" with the use of protective orders); *Pooler v. Me. Coal Prods.*, 532 A.2d 1026, 1028 (Me. 1987) (determining that confidential materials were nevertheless admissible at trial); *Me. Sugar Indus., Inc. v. Me. Indus. Bldg. Auth.*, 264 A.2d 1, 6 (Me. 1970) (holding that, although certain information was confidential pursuant to statute, because the statute otherwise contained "no *express* provision barring use of the information in a judicial proceeding," the provision must be construed to allow disclosure in litigation).

[7]  The court did not undertake an in camera review of Moniz's entire appraisal report, but it implicitly agreed with the MDOT's argument that the entire report was irrelevant by allowing Moniz to testify upon finding that

> [w]hat has been produced by Mr. Moniz through prior discovery production . . . involves the report as it relates to Mr. Pinkham's property. That report also includes the basis upon which that appraisal was prepared and conducted, and the determination made, as well as the comparable sales that were referenced in the information regarding those comparable sales. That information . . . has since been supplemented by order of this Court with additional production of documents . . . .

In other words, the court found that Pinkham had the information that he needed concerning the appraisal of his property to discern the basis of Moniz's opinion and conduct an effective cross-examination.

*Jacob v. Kippax*, 2011 ME 1, ¶ 14, 10 A.3d 1159, and discovery orders themselves for an abuse of discretion, *Picher v. Roman Catholic Bishop of Portland*, 2013 ME 99, ¶ 6, 82 A.3d 101.  The interpretation of a statute is subject to de novo review.  *In re E.A.*, 2015 ME 37, ¶ 10, 114 A.3d 207.

[¶18]  "The measure for just compensation in a partial takings case is the difference between the fair market value of the property immediately before the taking and the fair market value of the property remaining immediately after the taking."  *McTeague v. Dep't of Transp.*, 2000 ME 183, ¶ 8, 760 A.2d 619.  "[F]air market value . . .  is the market value of the land for its best and highest use at the time of the taking or in the foreseeable future."  *Curtis v. Me. State Highway Comm'n*, 160 Me. 262, 266, 203 A.2d 451 (Me. 1964).

[¶19]  Although there are myriad ways to determine the fair market value of property, the methodology chosen by the MDOT's appraiser to assess the value of Pinkham's property was the "sales comparison" method, in which, Moniz testified, he used "arms-length sales in the market to compare to the subject property that you're appraising.  The purpose is to find as similar properties as possible, that have been bought and sold in the open market."  The use of this method is not, in itself, problematic; we have held that a court may examine evidence of comparable sales "to inform its decision."  *McTeague,* 2000 ME 183, ¶ 9, 760 A.2d 619; *see Terfloth v. Town of Scarborough*, 2014 ME 57, ¶ 11 n.5, 90 A.3d 1131 (noting

14

that "one of three general methods of determining fair market value is appraising property by analyzing sale prices of similar property" (quotation marks omitted)).

[¶20]  In determining whether the method was reliable, however, knowing which properties were used as "comparables" is important.  None of the comparables used by Moniz when appraising Pinkham's property was a property whose value was affected by the sale of a seventeen-foot-wide or similar sized strip of road frontage.  The MDOT's appraisal relied instead on the sales prices of undeveloped parcels of land along Route 1A that were not involved in the widening project.  Whether Moniz used the comparable sales method in assessing the other properties affected by this project, and whether the comparables Moniz used for Pinkham's property were the same ones he used for the rest of the project is not known; Pinkham was precluded from reviewing those portions of Moniz's report that contained information about the methods he used or the results he reached when appraising all of the other properties along Route 1A from which the MDOT took strips of land as part of the same widening project.

[¶21]  The MDOT points out that because of the "distinctiveness" of each parcel of property, the appraisals of the neighbors' properties taken for the same project are irrelevant.[8]  This argument is not persuasive.  Although Pinkham's

---

[8] In addition to arguing that the other appraisals were not discoverable because they were irrelevant, the MDOT has asserted that the appraisal information for any other parcels affected by the project was inadmissible.  To support this portion of its argument, the MDOT references *Bajwa v. Sunoco, Inc.*, in

property may have differed from his neighbors' properties—in terms of size and use, for example—those properties did share other facts in common with Pinkham's, such as their locations, the widths of the pieces taken, the time frame in which the properties were taken by the State, and the circumstances in which the properties were taken. The sizes and uses of the different properties are distinctions that may be explored on cross-examination, or that may provide bases for arguing about admissibility, but such distinctions do not provide a basis for exempting the appraisal information from discovery. The MDOT negotiates for and acquires property on a project-wide basis, so the methods and information used to appraise all of the parcels in that project are arguably relevant to the determination of the value of one parcel. In *Timberlands, Inc. v. Maine State Highway Commission*, we vacated a judgment when the court, in its jury instructions, withdrew relevant valuation evidence from the jury's consideration. 284 A.2d 894, 895 (Me. 1971). We observed,

---

which a federal court held that "sales to potential condemnors are involuntary sales and as such cannot establish the fair market value of comparable property." 329 F. Supp. 2d 726, 733 (E.D. Va. 2004). A closer reading of *Bajwa* reveals, however, that the court's conclusion regarding the irrelevance of information of similarly situated property owners was limited to the evidence of the *sale price* of those properties. *Id*. at 733-734 (referencing, in turns, "[t]he *price paid* by a condemnor," "evidence of *prices paid* by the government," the "*payments*" made in a condemnation, the "*sales* of property made to agencies vested with the power of eminent domain," "*sales* to condemnors," and the like (emphases added) (quotation marks omitted)). Although we agree with the MDOT that the prices *paid* for condemned or taken properties could reflect compromises made to avoid the expense and uncertainty of litigation given the involuntary nature of a government taking, the *appraisals* of such properties present no such concern, as demonstrated by the MDOT's introduction of an appraisal of Pinkham's property to establish its fair market value.

> Where the value of real estate is in issue, any evidence which will aid the jury in fixing the fair market value of the property is admissible for their consideration, provided such evidence is not speculative in nature, would be considered by a prospective seller or purchaser and tends to enhance or depreciate the value of the property taken. . . . The owner of the land taken by the process of eminent domain has the right to this higher fair market value or at least to the opportunity of proving it to the jury, as he is entitled to no less under the constitutional mandate than an exact equivalent for the injury.

*Id.* at 897-98.

[¶22]   Here, the MDOT is not attempting to use section 63 to avoid a competitive disadvantage, as section 63 contemplates, *see Davric Me. Corp. v. Me. Dep't of Transp.*, 606 A.2d 201, 203 (Me. 1992); the negotiations between the MDOT and Pinkham have long since concluded.  Rather, the MDOT seeks the protection of section 63 to obtain a trial advantage in denying Pinkham the information that would allow him to effectively challenge the MDOT's calculation of Pinkham's property value.  *See United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 23 (D. N.D. Cal. 1985) ("The [property owners] seek discovery of the original appraisal report not to improve their position in the long-since terminated negotiations, but to equip them to present their case fully in the upcoming trial of this matter.").  We conclude that the appraisals of properties taken in the course of this same widening project are relevant at least for discovery

purposes pursuant to M.R. Civ. P. 26.[9]  *See Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132, 1137 (5th Cir. 1980) ("An appraisal is relevant in a condemnation proceeding to the extent that it bears upon the primary issue of just compensation.").

[¶23]  Both the Maine Constitution and Maine statutes guarantee Pinkham the right to be paid just compensation for the land taken from him.  Me. Const. art. I, § 21; 23 M.R.S. § 157.  Pinkham has the right to have a fair trial with regard to this property claim.  Although we are cognizant of the deferential standard of review concerning a trial court's discovery rulings generally, *Picher*, 2013 ME 99, ¶ 6, 82 A.3d 101, we must conclude that the discovery rulings here prevented Pinkham from having that fair trial.  The court incorrectly relied on section 63 to prohibit Pinkham from obtaining relevant information in discovery and seeking to present it at trial; section 63 does not preclude either.  Therefore,  the interests of justice require that Pinkham be given the opportunity to review that information in

---

[9]  In the absence of any discovery privilege pursuant to section 63, and because Moniz was the State's expert who was allowed to present his opinion of the fair market value of the taken property, the facts and data underlying his opinion were also discoverable pursuant to M.R. Evid. 705(a), (b).  Because we conclude that Moniz's entire appraisal report was the proper subject of discovery, we need not address Pinkham's alternative argument, that if the entire appraisal report were not discoverable, M.R. Evid. 508 precluded the State from offering Moniz as a witness.  In addition, Pinkham's argument that the court should have permitted testimony from James Sarosi, another landowner whose property was taken, is not persuasive and we do not discuss it further.

discovery—within the constraints of any protective provisions to preclude its public disclosure pursuant to Rule 26[10]—and to seek its admission at a new trial.[11]

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

[10] A well-established structure is already in place to limit the public availability of confidential information even when discoverable. *See* M.R. Civ. P. 26(b)(5)(A), (c), (g). The court may issue a protective order precluding discovery, specifying the terms and conditions of discovery, setting out the method of discovery, limiting the scope of discovery, designating who may be present while discovery is conducted, sealing a deposition, protecting trade secrets, ordering the parties to file documents simultaneously, allocating the costs of discovery, requiring the presentation of a witness on a discovery issue, ordering an in camera inspection, or requiring the parties to redact certain materials. M.R. Civ. P. 26(c); *Me. Health Care Ass'n Workers' Comp. Fund*, 2009 ME 5, ¶ 11, 962 A.2d 968 ("[T]he hearing officer acted more than reasonably in formulating the protective order, engaging in appropriate balancing between [one party's] need for the information and the confidentiality concerns of [the other party]."); *see St. Paul Ins. Co. v. Hayes*, 2001 ME 71, ¶ 10 & n.3, 770 A.2d 611 (suggesting that a party could have sought a protective order in discovery); *Halacy v. Steen*, 670 A.2d 1371, 1377 (Me. 1996) ("The terms of release should limit access to the [document] to insure that the disclosed material is no more widely broadcast than is absolutely necessary."); *Mondello v. Gen. Elec. Co.*, 650 A.2d 941, 943 (Me. 1994) (discussing redacted deposition transcripts); *cf. Med. Mut. Ins. Co. of Me. v. Bureau of Ins.*, 2005 ME 12, ¶¶ 14-15, 866 A.2d 117 (concluding that certain information did not constitute a trade secret, and therefore was not entitled to a protective order in discovery).

[11] Even more protections are in place as to admissibility at trial. The Rules of Evidence guarantee, for example, that only evidence that is relevant, M.R. Evid. 402; authentic, M.R. Evid. 901; not unfairly prejudicial, M.R. Evid. 403; and offered by a competent witness, M.R. Evid. 601, reaches a fact-finder. The Maine Rules of Evidence also prevent the admission of privileged information, M.R. Evid. 501, but contain no exclusion for non-privileged confidential information. Courts have the authority to prevent the general public from having access to records and watching proceedings that the Legislature has deemed confidential. *See* Field & Murray, *Maine Evidence* § 501.4 at 211-12 (6th ed. 2007). The outcome the Legislature wished to avoid by making materials confidential is thereby still preserved even during discovery and at trial. Furthermore, given these protections, a party may not necessarily obtain information in discovery just by filing an appeal of the government's denial of a FOAA request.

**On the briefs:**

>Jeffrey T. Edwards, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellant Terrence E. Pinkham

>Rebecca H. Farnum, Esq., and Jason P. Donovan, Esq., Thompson & Bowie, LLP, Portland, for appellee Maine Department of Transportation

>Jonathan Arey, Esq., Maine Turnpike Authority, Portland, for amicus curiae Maine Turnpike Authority

>Sigmund D. Schutz, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for amici curiae Maine Freedom of Information Coalition and New England First Amendment Coalition

>Richard L. O'Meara, Esq., Murray Plumb & Murray, Portland, Lauri Boxer-Macomber, Esq., Kelly, Remmel & Zimmerman, Portland, and Ben D. Kappelman, Esq., Dorsey & Whitney LLP, Minneapolis, Minnesota, for amicus curiae Maine Trial Lawyers Association

>Zachary L. Heiden, Esq., American Civil Liberties Union of Maine Foundation, Portland, for amicus curiae American Civil Liberties Union of Maine Foundation

**At oral argument:**

>Jeffrey T. Edwards, Esq., for appellant Terrence E. Pinkham

>Jason P. Donovan, Esq., for appellee Maine Department of Transportation