STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, ss.                           AUGUSTA
                                        DOCKET NO. AP-16-26


MAINE BEHAVIORAL
HEALTH CARE,
        Petitioner


v.                                      **ORDER ON RESPONDENT'S**
                                        **MOTION TO DISMISS**


EDWARD DAHL et. als.,
        Respondents


## I. Posture of the Case:

This case is before this Court on Respondents' Motion to Dismiss Petitioner's 80C Petition For Review Of Final Agency Action.

Oral argument on Respondents' Motion To Dismiss was conducted for October 5, 2016.

## II. Procedural Background:

1.  On April 28, 2016, Petitioner Maine Behavior Health filed a petition for review of final agency action pursuant to M.R. Civ. P. 80C against Respondents Edward Dahl, Director, State of Maine Bureau of General Services ("BGS"); Richard W. Rosen, Commissioner, Department of Administrative and Financial Services; and Appeal Panel, State of Maine, RFP #201506114, Crisis Mobil Resolution and Stabilization Unit Services (the "Panel").

2.  On May 18, 2016, Intervenors Sweetser and The Opportunity Alliance ("TOA") filed a joint entry of appearance and statement of position requesting that this Court deny the relief sought by Petitioner.

3.  On July 8, 2016, Respondents filed a Motion to Dismiss Petitioner's petition, claiming that Petitioner lacks standing.

4.     On July 20, 2016, Party-in-Interest State of Maine Department of Health and Human Services ("DHHS") filed a memorandum of interested party in support of Respondents' Motion to Dismiss.

5.     On July 22, 2016, this Court granted Petitioner's unopposed motion to extend the time for filing 80C briefs. Pursuant to this Court's Order, Petitioner's 80C brief shall be filed within 21 days after this Court issues its decision on Respondents' Motion to Dismiss.

6.     On August 1, 2016, Petitioner filed an opposition to Respondents' Motion to Dismiss.

7.     On August 9, 2016, Respondents filed a reply to Petitioner's opposition to Respondents' Motion to Dismiss.

8.     On August 10, 2016, Sweetser and TOA filed a memorandum in reply to Petitioner's opposition to Respondents' motion to dismiss. Sweetser and TOA support Respondents' Motion to Dismiss.

### III. Factual Background:

9.     In the summer of 2015,[1] DHHS issued an RFP seeking proposals to provide certain services as part of the State of Maine Crisis Intervention System. (R. Vol. 1: Tab 1.) "The RFP sought proposals for each of eight geographic districts within the state, referred to as Districts 1 through 8. Bidders were required to submit separate proposals for each district in which they sought to provide the relevant services." (Pet'r's Pet. ¶ 9.)

10.     Petitioner and Sweetser each submitted proposals for Districts 1, 2, and 4. (Pet'r's Pet. ¶ 13.) TOA submitted a proposal for District 2. (Pet'r's Pet. ¶ 13.) DHHS granted conditional awards for Districts 1 and 4 to Sweetser and for District 2 to TOA. (Pet'r's Pet. ¶ 15.)

11.     Pursuant to 5 M.R.S. § 1825-E(2), Petitioner requested an appeal hearing regarding the validity of the conditional awards for Districts 1, 2, and 4, and Respondent Dahl granted Petitioner's request. (Pet'r's Pet. ¶ 17.) Sweetser and TOA were granted intervenor status in the appeal proceedings. (Pet'r's Pet. ¶ 18.) Pursuant to 5 M.R.S. § 1825-E(3), BGS convened the three-member Committee and appointed a hearing officer. (Pet'r's Pet. ¶ 19.) Petitioner, DHHS, Sweetser

---

[1] Petitioner states that it was August 19 (Pet'r's Pet. ¶ 9), and Respondents state that it was some time in July (Resp. Mot. Dismiss at 2). The Record does not appear to contain the date.

2

and TOA all participated in the appeal hearing held on March 4 and 7, 2016. (Pet'r's Pet. ¶¶ 20- 21.) Petitioner argued before the Appeal Committee that multiple portions of the RFP were legally invalid and that the method of scoring the proposals was arbitrary and capricious. (Pet'r's Pet. ¶ 23.)

12.   The Appeal Committee issued its decision to BGS on March 29, 2016. The Appeal Committee found that one section of the RFP was "inconsistent" with RFP requirements, but that the RFP was still valid.   However, the Committee also found that "[t]he proposals were scored in a manner that was arbitrary and capricious," and it invalidated the awards on that basis.

13.   On April 15, 2016, DHHS "communicated to the bidders" that it would rescore the previously submitted proposals pursuant to the Appeal Committee's decision. (Pet'r's Pet. ¶ 26.) On April 20, 2016, Petitioner submitted a letter to BGS and DHHS requesting that DHHS reissue the RFP rather than simply rescore the previously submitted proposals. (Pet'r's Pet. ¶ 27.) On April 26, 2016, DHHS "advised the bidders" that it would continue with its plan to rescore the previously submitted proposals rather than reissue the RFP. (Pet'r's Pet. ¶ 28.)[2]

14.   On April 28, 2016, Petitioner filed its 80C petition with this Court. Petitioner alleges that the Appeal Committee erred by failing to invalidate the contract awards on the basis of the invalidity of the RFP. It requests that this Court modify the Appeal Committee's decision accordingly.

## IV. Arguments:

### a.   Respondents' motion to dismiss.

15.   Respondents ask this Court to dismiss Petitioner's petition because Petitioner is not an "aggrieved person" under the Administrative Procedures Act ("APA") and  accordingly lacks standing.

16.   Respondents argue that Petitioner was not aggrieved by the Appeal Committee's decision because the Committee "was statutorily limited to validating or invalidating the DHHS contract awards. It could not modify the...awards or make new awards." (Mot. Dismiss 6.)   According to Respondents, the Committee granted to Petitioner the only relief that it was capable of granting – invalidating the awards – thereby leaving Petitioner no standing to appeal. "If a party's sole interest in prosecuting an appeal is to press arguments that were not fully addressed or rejected by an agency, it does not

---

[2] DHHS now asserts that it is not sure how it will proceed with regard to the awards. (DHHS' Mem. 6.)

3

have standing to appeal." (Mot. Dismiss 6 (citing *Desmond v. Persina*, 381 A.2d 633, 638 (Me. 1978).)

### b. DHHS's memorandum in support of Respondents' Motion to Dismiss.

17. DHHS argues that Petitioner has failed to assert a particularized injury because Petitioner did not have a property interest in the contract awards. (DHHS' Mem. 4 (citing *Carrol F. Look Construction Co., Inc. v. Town of Beals*, 2002 ME 128 ¶¶ 11-16, 802 A.2d 994).) According to DHHS, Petitioner must wait until "the rescoring, reissuing, cancellation, or some other action" relating to the RFP has occurred before Petitioner may properly appeal. (DHHS' Mem. 5 (citing 5 M.R.S. § 1825-E; *Nelson v. Bayroot*, 2008 ME 91, ¶ 10, 953 A.2d 378).)

18. In addition, DHHS requests that this Court expedite its decision in this matter, arguing that Petitioner's appeal has "delayed implementation of *all* related Crisis Intervention System contracts" and "prompted DHHS to refrain from taking any action following the [Panel's] decision." (DHHS' Mem. 6 (citing *York Hosp. v. Dep't of Health & Human Servs.*, 2008 ME 165, ¶¶ 31-37, 959 A.2d 67).)

### c. Petitioner's opposition to Respondents' Motion to Dismiss.

19. Petitioner argues that "If DHHS simply rescores the previously submitted proposals, the resulting awards will be impaired by the same legal deficiencies [as the invalidated awards], meaning that the bidders, including [Petitioner], Sweetser and TOA, will not be competing fairly…and that the losing bidders will almost certainly appeal…." (Pet'r's Opp'n to Mot. Dismiss 10.)

20. Further, Petitioner argues, the Law Court has held that parties have standing to appeal a favorable ruling if that ruling "awarded less than the relief requested." (Pet'r's Opp'n to Mot. Dismiss 11 (citing *Sevigny v. Home Builders Ass'n of Maine*, 429 A.2d 197, 201-02 (Me. 1981); *Pinkham v. Dep't of Transp.*, 2016 ME 74, ¶ 5 n.3, 139 A.3d 904).)

21. Finally, Petitioner argues, the Appeal Committee's favorable ruling, "does not divest the Court of its power to provide meaningful relief, as Respondents would suggest," because the APA empowers this Court to modify the Appeal Committee's decision if it finds that the decision "is affected by an error of law." (Pet'r's Opp'n to Mot. Dismiss 11 (citing 5 M.R.S.A. § 11007(4)).)

### d. Respondents' reply to Petitioner's opposition to Respondents' Motion to dismiss.

22. Respondents reply that the Committee's decision "has no precedential value and any future initiative will be independent of the process now on appeal." (Resp'ts' Reply to Pet'r's Opp'n to Mot. Dismiss 2.) Respondents distinguish *Sevigny v. Home Builders Ass'n of Maine* because the nominally favorable judgment in *Sevigny* was based on a finding that might prejudice eventually the appealing party via collateral estoppel, while collateral estoppel does not apply to the Committee's decision in this case. (Resp'ts' Reply to Pet'r's Opp'n to Mot. Dismiss 3 (citing *Sevigny v. Home Builders Ass'n of Maine*, 429 A.2d 197 (Me. 1981)).)

23. Furthermore, Respondents argue,

> the failure of [Petitioner] to receive an award was not because of the evaluation and scoring of Cost or Economic Impact. Rather it was because [Petitioner's] proposal was rated significantly lower than proposals of the other bidders on criteria measuring Organization, Qualifications and Experience, and on Specifications of work to be Performed.

(Resp'ts' Reply to Pet'r's Opp'n to Mot. Dismiss 2.)

24. Finally, Respondents argue, by invalidating the awards, the Committee granted to Petitioner all the relief it sought and all the relief that the Committee was authorized to grant. (Resp'ts' Reply to Pet'r's Opp'n to Mot. Dismiss 3.) Respondents distinguish *Pinkham v. Dep't of Transp.* because the nominally favorable judgment in *Pinkham* granted less compensation than Pinkham sought and less than the Superior Court was authorized to grant. (Resp'ts' Reply to Pet'r's Opp'n to Mot. Dismiss 3-4 (citing *Pinkham v. Dep't of Transp.*, 2016 ME 74, 139 A.3d 904).)

  e. Intervenors' reply to Petitioner's opposition to Respondents' motion to dismiss.

25. Intervenors Sweetser and TOA "join fully" in Respondent's motion to dismiss, "concur with much of [DHHS's] supporting memorandum,"[3] and reply to Petitioner's opposition. (Intervenors' Reply to Pet'r's Opp'n to Mot. Dismiss 1.)

26. Sweetser and TOA argue that "[Petitioner] asks this Court…to require the [Appeal Committee] to deviate from its own adherence to the common

---

[3] Sweetser and TOA disagree with DHHS's assertion that it cannot act on the awards while this matter is pending because there is no stay in place. (Intervenors' Reply at 4 n.2.)

appellate practice of declining to decide more than it must in order to dispose of the matter before it." (Intervenors' Reply to Pet'r's Opp'n to Mot. Dismiss 4.)

27. Further, Sweetser and TOA argue, if DHHS chooses to rescore the proposals, Petitioner can choose to appeal the resulting award, as opposed to the Committee's decision in this case: "If MBH believes its rejected legal argument...would be dispositive, it can appeal the new award on that basis." (Intervenors' Reply to Pet'r's Opp'n to Mot. Dismiss 5.)

28. Finally, Sweetser and TOA argue, "this Court is not authorized to micromanage future administrative agency action" by modifying the Appeal Committee's decision. (Intervenors' Reply to Pet'r's Opp'n to Mot. Dismiss 2.) According to Sweetser and TOA,

> [i]n effect, MBH seeks to have this Court oversee directly the DHHS procurement process, even though the statute provides for an intermediate appellate process, which is the layer of executive action actually subject to judicial scrutiny. For this Court to ignore that intermediate appellate layer and give instructions as to how DHHS should proceed or how valid or invalid its RFPs might be would not only exceed its judicial review powers under the Maine APA, but would also impinge on the constitutional separation of powers between the Judicial and Executive Branches.

(Intervenors' Reply to Pet'r's Opp'n to Mot. Dismiss 5-6 (citing *Bar Harbor Banking and Trust Co. v. Alexander*, 411 A.2d 74, 76-77 (1980); *Johnson v. City of Augusta*, 2006 ME 92, ¶ 7, 902 A.2d 855).)

## V. Standard of Review:

29. This Court reviews Respondent's motion to dismiss under M.R. Civ. P. 12(b)(1) without making any inferences in favor of Petitioner. *Davric Me. Corp. v. Bangor Historic Track, Inc.*, 2000 ME 102, ¶ 6, 751 A.2d 1024. Furthermore, this Court "should consider any material outside pleadings submitted by the [parties]." *Id.* (quoting *Hodgdon v. U.S.*, 919 F. Supp. 37, 38 (D. Me. 1996).)

## VI. Analysis:

30. "To have standing, a party must have a sufficient personal stake in the controversy, at the initiation of the litigation, to seek a judicial resolution of the controversy." *Madore v. Maine Land Use Regulation Comm'n*, 1998 ME 178, ¶ 8, 715 A.2d 157. "[A]ny person who is aggrieved by final agency action shall be entitled to judicial review thereof...." 5 M.R.S. § 11001(1) (2015). "A person is aggrieved within the meaning of the APA if that person has suffered particularized injury--

6

that is, if the agency action operated prejudicially and directly upon the party's property, pecuniary or personal rights." *Nelson v. Bayroot, LLC*, 2008 ME 91, ¶ 10, 953 A.2d 378.

31. Pursuant to 5 M.R.S. § 1825-E(3) (2015) and 18-554 C.M.R. ch. 120, § 4 (1996), the Appeal Committee was empowered either to validate or invalidate the bid awards. The Committee was specifically **not** empowered to modify the awards or make new awards. *Id.* If the Committee invalidated an award, the award would "become immediately void and of no legal effect." *Id.*

32. Generally, "'a party is not aggrieved by a judgment granting the relief requested in his pleadings.' There is an exception, however, when 'an essential finding on which the judgment is based might otherwise prejudice the party through the use of collateral estoppel in the future proceeding.'" *Witham Family Ltd. v. Town of Bar Harbor*, 2011 ME 104, ¶ 16, 30 A.3d 811 (quoting *Sevigny v. Home Builders Ass'n of Me., Inc.*, 429 A.2d 197, 201 (Me. 1981). In *Witham Family Ltd.*, a developer appealed to the board of appeals the planning board's denial of its request for a permit on grounds related to a height requirement. *Id.* ¶ 3. The board of appeals reversed the planning board's decision and remanded for the board to issue the permit. *Id.* ¶ 4. An abutting landowner then filed its own appeal of the planning board's decision, arguing that the planning board was right to deny the permit, but that it should have done so on additional grounds beyond the height requirement. *Id.* ¶ 5. The board of appeals affirmed the planning board's findings on the additional grounds, and the abutting landowner filed an 80B complaint. *Id.* ¶¶ 5-6. The Law Court held that the abutting landowner was an aggrieved party because "continuing adverse collateral consequences to the [the abutting landowner] would result from its failure to challenge the basis of the Planning Board's denial of [the developer's] permit." *Id.* ¶ 17.

33. The Court in *Witham Family Ltd.* distinguished its decision from that in *Brooks v. Town of North Berwick*, 1998 ME 146, 712 A.2d 1050, stating that in *Brooks*, "there was no lasting impact on the appellant from the rationale of the [reviewing body]; the invalidation of the [appealed] decision left no further possibility for litigation given that the unsuccessful party had not appealed." *Witham Family Ltd.*, 2011 ME 104, ¶ 18, 30 A.3d 811. In *Brooks*, a landowner appealed to the zoning board of appeals ("ZBA") a decision of the code enforcement officer ("CEO") regarding the allowed use of an abutting property. *Brooks*, 1998 ME 146, ¶ 4, 712 A.2d 1050. The landowner argued that (1) only the planning board was authorized to make decisions about allowed use and (2) the CEO's decision was wrong. *Id.* The ZBA agreed with the landowner that only the planning board was authorized to decide on allowed use, and it remanded to the

planning board to decide accordingly. *Id.* ¶ 5. The landowner filed an 80B complaint arguing that the ZBA should have ruled on the merits of the CEO's decision rather than remand to the planning board. *Id.* ¶ 6. The Law Court held that the landowner did not have standing to appeal the ZBA's decision because it had "in no way deprived him of the opportunity to challenge the merits of the [allowed use] before the Planning Board in accordance with the procedure specified in the ordinance, and to appeal any adverse decision of the Planning Board to the ZBA and, ultimately, to the courts." *Id.* ¶ 11.

34. In *M/A-COM, INC., v. Wyke*, the Superior Court (*Mills J.*) denied respondent's motion to dismiss petitioner's appeal of a panel's decision to invalidate an award to petitioner, even though the agency that issued the underlying RFP had since issued a new RFP for the same services. Respondent argued that the original RFP was no longer active because it had been replaced by the new RFP. However, the agency had never affirmatively withdrawn the original RFP, and the Court noted that, pursuant to 18-554 C.M.R. 120 § 4(b)(ii)(2007), the panel's decision to invalidate the award had no effect on the underlying RFP. *M/A-COM, INC., v. Wyke*, No. AP-08-42, 2008 Me. Super. LEXIS 242, at *6 (Oct. 28, 2008). This would seem to be a clear indication that the Committee's decision cannot affect the underlying RFP in this case. However, the award in *M/A-COM, INC.* was invalidated due to the appeal committee's finding that the "methodology used to evaluate the bids contained an irregularity causing fundamental fairness." *Id.* at * 2. There is no indication whether or not a finding by the appeal committee that the underlying RFP was legally invalid would have rendered that RFP invalid.

35. Here, similar to the appeal committee decision in *M/A-COM, INC., v. Wyke*, the awards were ultimately invalidated due to the Committee's finding that the bid scoring was arbitrary and capricious. (R. Binder 6, Tab 2 at 276-79.) However, the Committee also reviewed and ruled on Petitioner's allegations that the RFP itself was legally invalid. (R. Binder 6, Tab 2 at 274-76, 279-80.) In fact, the Committee specifically stated that, although there was a legal flaw in the RFP, that flaw not significant enough "in this instance" to render the RFP invalid. (R. Binder 6, Tab 2 at 276.)

36. Respondents seem to argue that Petitioner would not have received an award even if the RFP had conformed to Petitioner's interpretation of RFP requirements. However, Respondents specifically state in their argument that one of the reasons Petitioner failed to receive an award was that it scored lower than other bidders on "Specifications of work to be Performed," which was one of the aspects of the RFP that Petitioner argued rendered the RFP invalid. (Resp'ts' Reply to Pet'r's Opp'n to Mot. Dismiss 2; Pet'r's Pet. 6.)

8

37. Sweetser and TOA argue that Petitioner "asks this Court, acting in its appellate capacity, to require the [Panel] to deviate from its own adherence to the common appellate practice of declining to decide more than it must in order to dispose of the matter before it." (Intervenors' Reply to Pet'r's Opp'n to Mot. Dismiss 4). As discussed above, however, the Committee *did* review and rule on all of Petitioner's allegations, including the allegations that the RPF was legally invalid. Petitioner is not asking this Court to force the Committee to rule on anything it has not already ruled on. Rather, Petitioner is asking this Court to review the existing findings and ruling of the Committee for error.

38. Sweetser and TOA also argue that this Court cannot modify the Committee's findings regarding the legality of the RFP because it "would not only exceed its judicial review powers under the Maine APA, but would also impinge on the constitutional separation of powers between the Judicial and Executive Branches." (Intervenors' Reply to Pet'r's Opp'n to Mot. Dismiss 5-6 (citing *Bar Harbor Banking and Trust Co. v. Alexander*, 411 A.2d 74, 76-77 (1980); *Johnson v. City of Augusta*, 2006 ME 92, ¶ 7, 902 A.2d 855).) The Court in *Bar Harbor Banking and Trust* held that the Superior Court had erred in granting a temporary restraining order enjoining an administrative hearing because the order "directly interfered with the performance by the agency of its statutory duties." 411 A.2d 74, 78 (1980). The Court in *Johnson*, meanwhile, vacated a preliminary injunction ordering City of Augusta to print and deliver for circulation initiative petitions before the City Council had acted on the applications for the petitions. 2006 ME 92, 902 A.2d 855.

39. DHHS argues that Petitioner has failed to assert a particularized injury because Petitioner did not have a property interest in the contract awards. (DHHS' Mem. 4 (citing *Carrol F. Look Construction Co., Inc. v. Town of Beals*, 2002 ME 128 ¶¶ 11-16, 802 A.2d 994).) However, the Court in *Carrol* only analyzed whether the bidder had a property interest in the contract award with regard to the bidder's due process argument. *Id. at* ¶¶ 11-16, 802 A.2d 994. Although the Court did dismiss as moot the bidder's appeal of the Superior Court's dismissal of its 80B appeal as moot, it was because the work sought by the RFP had been already been completed. *Carrol F. Look*, 2002 ME 128 ¶¶ 5-7, 802 A.2d 994.

40. Respondents, DHHS, and Sweetser and TOA essentially argue that Petitioner has no standing because this Court's ruling will not affect Petitioner's position. Respondents' argument is based on the contention that the Panel had no power to compel DHHS to modify its RFP, regardless of the reason that it invalidates a contract award. In reply, Petitioners have offered this Court no case

law, statute, or rule showing that the Panel's reason for invalidating a contract award has any effect on the validity of the underlying RFP.

41.    In any event, the undersigned has taken the time to review the entire record below. This has resulted in a decision that has taken more than the 30 days the undersigned promised, and the Court regrets that delay. However, even after reading the entire record and the informative memoranda of counsel, the Court is left with the conclusion that: a) Petitioner challenged the validity of the contract awards; b) the Appeal Committee below had two options before it, i.e. validate the contract or invalidate the contract; c) the Appeal Committee **granted** the relief sought by Petitioner, or at least granted all the relief the Appeal Committee is statutorily authorized to grant; and d) the Petitioner is not "aggrieved" by the Appeal Committee's decision, at least as that term is used within the meaning of the Administrative Procedures Act, but rather simply doesn't agree with the rationale the Committee used to grant relief. *Nelson v. Bayroot, LLC, 2008 ME 91.* The undersigned declines to enter the fray at this point.

42.    Accordingly, the Motion to Dismiss is **granted.**

The Clerk is directed to incorporate this Order by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure.

Date: 11/29/16

BY _____

**Robert E. Mullen, Deputy Chief Justice**
**Maine Superior Court**

10